**IBERIA AIR LINES OF SPAIN,**
Plaintiff,

v.

**NATIONWIDE LEISURE CORPORATION,**
Defendant.

No. 75 C 483.

United States District Court,
E. D. New York.

Feb. 24, 1976.

---

Hale, Russell, Gray, Seaman & Birkett by Louis H. Kurrelmeyer, New York City, for plaintiff.

Boros & Garofalo, P. C., by Howard S. Boros, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action for breach of contract presents on motion of defendant the question whether the court must invoke the doctrine of primary jurisdiction and dismiss or stay the action in order to afford the Civil Aeronautics Board (CAB) an opportunity to exercise administrative discretion over the matters in issue. Plaintiff Iberia Air Lines of Spain (Iberia) is a foreign air carrier authorized by the CAB to engage in foreign air transportation. § 402 of the Federal Aviation Act of 1958 (the Act), 49 U.S.C. § 1372(a). Defendant Nationwide Leisure Corporation (Nationwide) is a wholesale travel agent in the business of marketing charter flights and tours.

On February 11, 1974, Iberia entered into a "reservation of space" agreement with Nationwide which provided for the operation of a "charter chain," i. e., daily "back to back" flights from December 19, 1974 to October 31, 1975 between points in the United States and Spain, the flights to be operated by Iberia with space to be sold for charter groups by Nationwide. Under the terms of the agreement Nationwide might not cancel any of the flights between December 19, 1974 and October 10, 1975 and promised to pay Iberia the full price applicable to any cancelled flights. For flights between October 11 and October 31, 1975, Nationwide might cancel up to 23 flights by giving notice of the cancellation but remained obligated for the contract price for any cancelled flights if it failed to notify Iberia by July 11, 1975.

The contract was written in Spanish and provided for interpretation in accordance with Spanish law. It also provided that all questions under the contract were to be submitted to the Courts of Madrid (Spain). This action presumably waives that provision.

The agreement was not filed with the CAB for approval. Iberia characterizes the agreement as a "shell" under which future charter contracts made by Nationwide, for example, contracts for inclusive tours with groups or affinity charters, would have arisen, and these particular contracts could if necessary have been later filed with the CAB.

Iberia was operating under an effective charter tariff during the time which was to be covered by the flights. Although that tariff included provisions for specified charges to charterers in case of their cancellation of flights, they did not apply to the agreement between Iberia and Nationwide.

On November 29, 1974, three weeks before the first scheduled flight, Iberia alleges Nationwide repudiated the entire

agreement and rescheduled the flights with other airlines. Iberia then brought this action to recover damages measured by the contract price, based on the cancellation clause and Spanish law, or alternatively its lost profits.

Nationwide now moves to have the issue of legality of the cancellation provision determined by the CAB. Nationwide argues that the flight cancellation provisions requiring full payment of the contract price in event of cancellation constitute unreasonable penalties and in effect unreasonable rates in conflict with CAB rules and policies and in violation of Section 403 of the Act, 49 U.S.C. § 1373. Nationwide further argues that because its claim brings into question the reasonableness of a rate, the CAB has jurisdiction over the matter and should have the first opportunity, under the doctrine of primary jurisdiction, to decide the issue of reasonableness.

This argument assumes as its premise that a cancellation provision in a contract between an air carrier and a charterer is a rate or charge for air transportation within the meaning of Section 403 of the Act. As statutory background, Section 403 requires every air carrier and foreign air carrier to file "tariffs showing all rates, fares, and charges for air transportation." It also provides that "no air carrier . . . shall charge . . . or receive a greater or less or different compensation for air transportation" than provided in its effective tariff. 49 U.S.C. § 1373(a) and (b).

Section 403 thus refers to air transportation charges or services rendered in connection therewith. Nationwide argues that the cancellation clause is such a charge. Two courts have ruled to the contrary applying what the court finds to be a reasonable interpretation of that section. See *Northwest Airlines, Inc. v. United States,* 444 F.2d 1097, 195 Ct.Cl. 356 (1971); *McCulloch International Airlines v. Anne Storch International, ASTI Tours, Inc.,* Docket No. 73 Civ. 1007 (S.D. N.Y., Feb. 14, 1975); 13 Avi. ¶ 17,562. But see *Ford Employees Recreational Association,* CAB Order 75–9–114 (Sept. 30, 1975).

*McCulloch* was an action for breach of contract by an airline against an inclusive tour operator for recovery, *inter alia,* under a liquidated damages clause for the charterer's cancellation of certain flights. On the charterer's claim that the absence of a liquidated damages clause from the carrier's effective tariff violated Section 403 the court held that the clause was not a "charge" within the meaning of that section. The court interpreted Section 403 to relate only to services rendered in the actual operation of an aircraft and not possible breaches of contract between a carrier and charterer.

Similarly *Northwest Airlines, Inc. v. United States, supra,* involved a charterer's claim that a "no show provision" in the contract between the carrier and the charterer, in this case a government agency, should have been included in the carrier's effective tariff. The clause required the charterer to pay in full for any unused seats not cancelled at least 15 days prior to flight. The court categorized the clause as a "reservation of space" provision and not an air transportation rate. As such the provision was not inconsistent with either the filed tariff or Section 403. The court ruled that the clause need not have been included in the filed tariff under Section 403.

The court finds these cases to be persuasive authority on the question of the nature of the cancellation clause involved in the present agreement. In contrast to a charge for air transportation the cancellation clause in the agreement between Iberia and Nationwide was the agreed proviso for the failure to use reserved air space for which Nationwide had contracted with Iberia. The provision when fairly read does not set a rate for air transportation or a charge for services connected thereto.

Whether this particular provision for cancellation of flights is even applicable to a total anticipatory repudiation of the agreement or whether the clause is un-

enforceable as a penalty are separate questions which cannot be answered at the present time.

■ However, assuming the charter cancellation provision is a charge for air transportation and Iberia's failure to include the clause in its tariff did violate Section 403, the enforceability of the clause in the contract is nonetheless a matter for judicial decision, and does not require resort to the CAB for an initial determination.

■ Under the doctrine of primary jurisdiction a question which "demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal" must be decided initially by the agency. *CAB v. Modern Air Transport, Inc.,* 179 F.2d 622 (2 Cir. 1950). See Davis, 3 Administrative Law Treatise §§ 19.01–.09. Where the claim is that a filed tariff is unreasonable in amount or unduly discriminatory, the agency with which the tariff is filed must make the first determination. *Danna v. Air France,* 463 F.2d 407 (2 Cir. 1972). On this issue the Supreme Court in the landmark case, *Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), held that

> "a shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable." *Id.* at 448, 27 S.Ct. at 358.

See also *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951); *Lichten v. Eastern Airlines, Inc.,* 189 F.2d 939 (2 Cir. 1951). However, where the issue is the violation, not the reasonableness, of a rate or rule the doctrine is largely inapplicable. *CAB v. Aeromatic Travel Corp.,* 489 F.2d 251 (2 Cir. 1974); *CAB v. Modern Air Transport, Inc., supra,* at 624.

Nationwide primarily bases reference to the CAB on the principle that this is a case "requiring the exercise of administrative discretion" in which, in the interest of uniformity, the CAB should not be passed over by the court. *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). Presumably this administrative discretion would be exercised to effect a uniform system of charter cancellation penalties to prevent differing rates among charterers or preferences of one charterer over another.

The need for uniformity, albeit a forceful argument in the field of transportation policy, is absent in these circumstances. Essentially the dispute herein concerns the enforceability of the underlying contract between Iberia and Nationwide on a claim of anticipatory repudiation, and not a question of administrative regulation or policy. Iberia characterizes the agreement as a bargained transaction under which each party received important consideration which could not be embodied in a tariff. For example, Iberia undertook to provide daily flights at a fixed rate for the duration of the service, a period of 20 months during which its tariff could not be amended. Nationwide in turn was obligated to utilize and pay for the flights and non-operational expenses but remained free to choose the type of charter arrangement, *e. g.,* inclusive tour or affinity charters, which best suited its needs.

In addition, Iberia urges that the agreement was not a charter contract in itself but a shell under which charter contracts were to have been entered into by it and Nationwide. Viewed in this light, Nationwide's anticipatory breach occurred prior to the stage of the individual charter contracts and prior to the presentation of questions of cancellation charges in individual contracts over which the CAB might have been called upon to exercise its discretion.

Nationwide points to recent CAB rulings in support of the existence of administrative regulation in the area of charter cancellations. The CAB has suspended air carriers' proposed tariff provisions which set general formulae for cancellation penalty clauses in passenger charter contracts where it was found the charges might be unjust, unreasonable or discriminatory and should be investigated. See *Capitol International Airways, Inc.,* CAB Order 75–2–18 (Feb. 5, 1975); *Dan-Air Services Limited,* CAB Order 74–9–72 (Sept. 6, 1974); *Trans International Airlines,* CAB Order 74–3–39 (Mar. 8, 1974).

These CAB rulings are not controlling. Not only did the proceedings involve applications by carriers to the CAB to insert liquidated damage clauses in their tariffs, but the proposed formulae would have applied to all flight cancellations in all circumstances. The present agreement between the carrier and a single charterer is not such a case. See *McCulloch International Airlines v. Anne Storch International, ASTI Tours, Inc., supra.*

As further evidence of CAB activity, Nationwide has brought to the court's attention a recent CAB proceeding which involved a petition by Ford Employees Recreational Association (FERA) to declare unenforceable provisions in a charter contract between FERA and World Airways for flights in December 1973. The provisions proscribed refunds of installment payments for flights cancelled by the charterer subsequent to a specific date. FERA cancelled before the scheduled flights after paying some of the installments and apparently no refunds were granted by World. World's tariffs contained no provision governing cancellations by the charterer. The CAB ruled that World's failure to insert cancellation provisions in its tariff violated Section 403 of the Act and the CAB's regulations thereunder. CAB Order 75–9–114 (Sept. 30, 1975).

However, what is relevant in that proceeding to the question presented here is that the CAB in FERA refused to resolve factual and legal issues relating to the underlying contract dispute on the grounds that it lacked authority to do so. In particular the CAB left the following issue for determination by a court:

"[w]hether [the carrier's] alleged violation of § 403 and/or Board's Regulations thereunder renders [the cancellation provision] of the contract unenforceable."

The legal and factual issues raised in the present action require the identical type of resolution, a judicial determination of the enforceability of the cancellation clause in the underlying agreement between Nationwide and Iberia.

Accordingly, Nationwide's motion to dismiss or stay this action pending an initial determination by the CAB of the legality of the cancellation provision under the doctrine of primary jurisdiction is denied.

So ordered.