PRISCILLA TORRES, PLAINTIFF, v. ESSEX TRAVEL SER-
VICE AND UNI TRAVEL CORPORATION, DEFENDANTS.

District Court
Essex County

January 4, 1979.

370

*Mr. Hugh M. Blair,* attorney for plaintiff.

*Messrs. Rothbard, Harris & Oxfeld,* attorneys for defendant.

*Mr. Joseph A. Marino,* attorney for defendant, Uni Travel Corporation.

BISSELL, J. D. C. On November 29, 1977 plaintiff Priscilla Torres filed the following complaint against defendant Essex Travel Service :[1]

### FIRST COUNT

1. At all times hereafter mentioned, Defendant is in the business of providing travel services and accomodations for the public.
2. On or about February 1, 1977, Defendant advertised a Unitravel Charters flight to England at a cost of $349.00 per person, departure date May 24, 1977.
3. Plaintiff upon seeing this offer contacted Defendant regarding same.

---

[1]By Order of the Court entered on May 1, 1978, plaintiff was allowed to join Uni Travel Corporation as a defendant. Uni Travel and Essex Travel Service are hereinafter referred to collectively as the "Defendant".

4. On or about March 1, 1977 Plaintiff, relying upon the representation made by Defendant, paid to the Defendant the sum of $798.00 representing the cost of two fares to England via Unitravel Charters flight.

5. On or about March 1, 1977 plaintiff advised the Defendant of her intention not to participate in the trip and demanded the return of her money.

6. On or about March 30, 1977 Defendant advised the Plaintiff that should she cancel her trip, she would forfeit a portion of her deposit. Accordingly Plaintiff reinstated her travel agreement.

7. On or about April 18, 1977 Plaintiff again advised Defendant of her intention to cancel the flight.

8. On or about June 27, 1977 Defendant advised Plaintiff that she had forfeited her entire deposit and as such was not entitled to a refund of her deposit of $798.

9. This was the first notice Plaintiff had that she would not be entitled to her refund.

WHEREFORE, Plaintiff demands judgment against the Defendant for $798 together with interest and costs of suit.

### SECOND COUNT

1. Plaintiff repeats each and every allegation of the First Count as if more fully set forth therein.

2. On or about March 1, 1977 Plaintiff entered into an agreement with Defendant to participate in the Unitravel Charters flight.

3. Plaintiff at that time was required to sign an application form.

4. Subsequent to Plaintiff's cancellation of her flight application, she was advised that a provision of the charter flight application provided for the forfeiture of the full purchase price.

5. Said charter flight application is by its terms and conditions so unconscionable as to be void as against public policy.

WHEREFORE, Plaintiff demands judgment against Defendant for $798 together with interest and costs of suit.

On October 3, 1978 defendant filed a motion for an order "Dismissing the action due to the Court's lack of subject matter jurisdiction in this suit." The basic ground for defendant's motion is that the subject of plaintiff's complaint is properly a matter for the primary jurisdiction of the Civil Aeronautics Board in its review and regulation of filed air carrier tariffs, and therefore the allegations of the complaint should be subjected to the review and analysis of the CAB, at least in the first instance, which they have not. In support of its motion defendant submits the certification of its attorney, its answers to plaintiff's interrogatories

and a supporting brief with exhibits. Plaintiff has filed a brief in opposition to the motion, alleging that the present action involves merely a contractual dispute which does not require the exercise of initial, primary jurisdiction by the CAB.

Initially, the court notes that the present motion does not actually involve subject matter jurisdiction. This court does have subject matter jurisdiction over the present contractual dispute involving an amount less than $3,000. *N. J. S. A.* 2A:6–34. Rather, the present motion is, in reality, a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. See the similar analysis presented by Mr. Justice Jackson in the case of *Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co.*, 341 *U. S.* 246, 249, 71 *S. Ct.* 692, 95 *L. Ed.* 912 (1951). Furthermore, since the movant relies upon materials outside the actual pleadings themselves, the present motion is to be treated by the court as a motion for Summary Judgment. *R.* 4:6–2; *R.* 4:46–2. Of course, defendant's inaccurate characterization of its motion does not preclude this court from considering the motion as a motion for summary judgment and ruling upon the merits of that motion.

There are certain undisputed facts material to the defendant's motion:[2]

1. On or about March 2, 1977 the Plaintiff, Priscilla Torres, booked with Unitravel via Essex Travel Service space on a flight departing May 24, 1977 and returning June 23, 1977 New York/London/Rome/New York.

2. In connection with those bookings, plaintiff paid the full cost of two fares in the sum of $798.

---

[2]These facts are either in plaintiff's allegations or defendant's sworn answers to plaintiff's interrogatories. Such answers may be considered by the court on a motion for summary judgment. *R.* 4:46–2. Plaintiff filed no affidavits in opposition to the motion. See *R.* 4:46–5.

3. Ms. Torres' reservations were for space on an Advance Booking Charter ("ABC") flight.

4. The provisions for forfeiture of prepaid sums upon cancellation of a booking, which form the subject matter of the present action, were included in the Participant Protection Agreement of defendant filed with the CAB which has neither conducted proceedings nor issued orders disapproving the same.

5. Those provisions were made available to plaintiff at the time she signed up for the flight in question.

6. The provisions of the Participant Protection Agreement which are particularly material to the present action are found in section E, entitled "Cancellations and Refunds," as follows:

a(ii) Except as provided in subparagraphs (b), (c), (d), and (e) of this paragraph and paragraph 3 of this Article, a participant may cancel an ABC Flight and receive a full refund of all monies paid (less 5% administrative charge) at any time prior to 75 days before departure; cancellations received within 75 to 50 days prior to departure shall be subject to a 50% cancellation fee; for cancellations received less than 50 days prior to scheduled departure all monies paid shall be retained by UTC.

\*    \*    \*    \*    \*    \*    \*    \*

e. For ABC's only, participants included in the original passenger list filed with the CAB under Article B4 may cancel a particular ABC Flight and receive a full refund provided such passenger's seat is resold to an eligible substitute passenger and full payment for such seat is received by the UTC from the substitute passenger.

7. Plaintiff cancelled her bookings for the overseas flight in question. The effective date of such cancellation is in dispute.

8. A copy of the Participant Protection Agreement was attached to the application which plaintiff signed, agreeing to all of the terms and conditions thereof, including those in the attached Participant Protection Agreement.

9. Despite its efforts to do so, defendant was unable to resell the seats reserved by Ms. Torres after she cancelled her reservation.

■ Plaintiff's opposition to the dismissal of the first count of her complaint is well taken. The first count deals solely with factual questions as to when plaintiff effectively notified defendant of her intention to cancel her reservations and/or whether the conduct of defendant (as alleged in paragraph 6 of the first count) was such as to preclude it from retaining all of the money prepaid by plaintiff. This contract claim does not require submission to the CAB under the doctrine of primary jurisdiction for its review. See *Danna v. Air France,* 463 *F.* 2d 407, 410, 412 (2 Cir. 1972) ; *Iberia Air Lines of Spain v. Nationwide Leisure Corp.,* 408 *F. Supp.* 221, 224 (E. D. N. Y. 1976) which the court adopts for purposes of the present point only; and *Ford Employees' Recreation Ass'n,* CAB Order 75-9-114 (Sept. 30, 1975) at 4. Accordingly, the motion to dismiss the first count of the complaint is denied.

■ The second count, however, is based upon the allegation that "Said charter flight application is by its terms and conditions so unconscionable as to be void as against public policy." Thus, in the second count plaintiff is attacking the conscionability of a provision of defendant's filed tariff. Furthermore, this attack is directed to the cancellation provision *on its face,* not merely as applied to this particular case. Accordingly, this court determines that plaintiff must submit such a claim to the CAB in the first instance, in order that this agency, employing its particular expertise and public policy considerations, may exercise its primary jurisdiction to determine whether the cancellation provision in question is unconscionable on its face.

The basic statutory authority for the CAB's jurisdiction over airline tariff's and complaints relating thereto is as follows:

(a) Every air carrier and every foreign air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it. . . . Tariffs shall be filed, posted, and published in such form and manner and shall contain such in-

formation, as the Board shall by regulation prescribe; and the Board is empowered to reject any tariff so filed which is not consistent with this section and such regulations. Any tariff so rejected shall be void. * * * [49 *U. S. C. A.* § 1373 (otherwise known as "§ 403")]

(a) Any person may file with the Administrator or the Board, as to matters within their respective jurisdictions, a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established pursuant thereto.

\* \* \* \* \* \* \* \*

(b) The Administrator or Board, with respect to matters within their respective jurisdictions, is empowered at any time to institute an investigation, on their own initiative. . . . The Administrator or the Board shall have the same power to proceed with any investigation instituted on their own motion as though it had been appealed to by complaint.

\* \* \* \* \* \* \* \*

(d) (1) Except as provided in paragraph (2) of this subsection whenever, after notice and hearing, upon complaint, or upon its own initiative, the Board shall be of the opinion that any individual or joint rate, fare, or charge demanded, charged, collected or received by any air carrier for interstate air transportation of persons . . . or overseas air transportation, or any classification, rule, regulation, or practice affecting such rate, fair, or charge, or the value of the service thereunder, is or will be unjust or unreasonable, or unjustly discriminatory, or unduly preferential, or unduly prejudicial, the Board shall determine and prescribe the lawful rate, fare, or charge (or the maximum or minimum, or the maximum and minimum thereof) thereafter to be demanded, charged, collected, or received, or the lawful classification, rule, regulation, or practice thereafter to be made effective.

\* \* \* \* \* \* \* \*

(g) Whenever any air carrier shall file with the Board a tariff stating a new individual or joint (between air carriers) rate, fare, or charge for interstate or overseas air transportation or any classification, rule, regulation, or practice affecting such rate, fare, or charge, or the value of the service thereunder, the Board is empowered, upon complaint or upon its own initiative, at once, and, if it so orders, without answer or other formal pleading by the air carrier, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fair, or charge, or such classification, rule, regulation, or practice; and pending such hearing and the decision thereon, the Board . . . may suspend the operation of such tariff and defer the use of such rate, fare, or charge, or such classification,

rule, regulation, or practice \* \* \*. \* \* \*
[49 *U. S. C. A.* § 1482 (otherwise known as "§ 1002"]³

Defendant states in its answer to Plaintiff's Interrogatories that its Participant Protection Agreement "was filed at and accepted by the United States Civil Aeronautics Board". This would appear to mean that this filing has never been challenged before the CAB either by a private complaint or by the CAB on its own initiative. Plaintiff has not argued that she is now precluded from attacking the reasonableness of the present cancellation provision before the CAB, and this court's research has disclosed no statutory or regulatory period of limitations or other bar to such an administrative complaint. The mode of challenging a filed tariff, and the status of such a tariff until it is successfully challenged, has been described as follows:

> The principle established by these cases with regard to the Civil Aeronautics Board and the tariffs therewith filed by the air line carriers, is in substance this: The carrier is obliged by the statute and regulations to file these schedules in the first place. The Board may at once reject them as improper or unreasonable; but if not so rejected they continue to be valid and enforceable until the question of their alleged invalidity for unreasonableness or otherwise is challenged by the Board or by interested parties before the Board, and held by the Board to be invalid. In a suit against a carrier the tariff schedules must be accepted and applied by the courts in litigation unless and until the Board has otherwise ruled. This is in accordance with the modern judicial point of view with respect to federal regulatory agencies. [*Alco-Gravure Div. of Pub. Corp. v. American Airlines*, 173 *F. Supp.* 752, 755 (D. Md. 1959)]

██ ██ As stated by the court in *Blair v. Delta Air Lines, Inc.,* 344 *F. Supp.* 360, 365 (S. D. Fla. 1972), "First, it is clear that a tariff, required by law to be filed, constitutes the law and is not merely a contract." The *Blair* court continued:

---

³Subsection (j) of § 1002 has similar provisions for hearings and temporary suspensions by the CAB with regard to new or existing tariffs in foreign air transportation. 49 *U. S. C. A.* § 1482(j).

"Apparently, the plaintiff is attempting to challenge the validity of defendant's tariff. This challenge cannot be presented to this Court in the first instance. The applicable federal law is summarized in *Tishman, supra*, 275 F. Supp. at 475: In *Lichten* the court stated that it is well settled that questions of the reasonableness of rates and practices are to be left to the administrative agency in the first instance, and that under this doctrine of 'primary jurisdiction' the reasonableness of the rule could be raised only after the exhaustion of administrative remedies. It is held to be essential, in order to assure uniformity that the Board have 'primary jurisdiction' to determine the issue of reasonableness." [at 366]

The landmark *Tishman* and *Lichten* cases cited in the *Blair* opinion are *Tishman & Lipp, Inc. v. Delta Airlines*, 275 F. Supp. 471 (S. D. N. Y. 1967), aff'd 413 F. 2d 1401 (2 Cir. 1969), and *Lichten v. Eastern Airlines*, 87 F. Supp. 691 (S. D. N. Y. 1949), aff'd 189 F. 2d 939 (2 Cir. 1951). The United States Court of Appeals for the Second Circuit has more recently reiterated the necessity for resort to the CAB in a matter such as the case at bar. That court held in *Danna v. Air France*, 463 F. 2d 407:

It is beyond dispute that claims that filed tariffs are either unreasonable in amount or unduly discriminatory in effect are questions that in the first instance must be determined by the agency with which the tariffs are filed. Any attempt to sue in *federal court or in state court*[4] on such claims without first obtaining an agency determination of unreasonableness or undue discrimination fails to state a cause of action. To sue first in court is to fall into the error of regarding . . . reasonableness as a justiciable legal right rather than a criterion for administrative application in determining a lawful rate. [Emphasis added]

The court now directs its attention to cases in the courts and before the CAB which have specifically considered the

---

[4]A *state* court should be particularly wary of invading the domain of a federal administrative agency due to considerations of federal preemption and comity. See the exhaustive treatment of these principles by Judge Baime of this court in the recent, analogous case of *Hill Manor Apartments v. Brome*, 164 N. J. Super. 295 (Cty. D. Ct. 1978).

question of the enforceability of cancellation penalty charges such as those involved in the case at bar. The CAB certainly believes that such matters are within its jurisdiction as defined in §§ 403 and 1002 of the act, *supra,* and the CAB's regulations thereunder. The court has reviewed three published orders of suspension and investigation involving the CAB's review, on its initiative, of an airline's charter cancellation penalty charges. *Transinternational Airlines,* CAB Order 74-3-39 (March 8, 1974) ; *Dan-Air Services Limited,* CAB Order 74-9-72 (September 6, 1974) ; *Capital International Airways, Inc.,* CAB Order 75-2-18 (February 5, 1975). Indeed, in July 1974 the directors of the Bureau of Economics and Bureau of Operating Rights of the CAB sent a letter to all passenger air carriers noting "that many U. S. and foreign air carriers do not have charter cancellation provisions in their effective tariffs although they have such provisions in their charter contracts," and that the failure to include such provisions in filed tariff materials violated several of the "Board's Economic Regulations" as well as § 403 of the act itself. See a copy of this letter which is annexed to and affirmed by the CAB opinion in *Petition of Ford Employees Recreational Ass'n,* CAB Order 75-9-114 (September 30, 1975). Clearly, the CAB believes that its statutory and regulatory authority extends to cancellation penalty provisions embodied in a carrier's charter contract. Three federal courts, in adjudicating controversies concerning cancellation penalty provisions which were *not* included within the carrier's filed tariffs, have held that such provisions need not be so filed because they do not constitute a "charge" for the actual operation of the aircraft, under § 403. *Northwest Airlines, Inc. v. United States,* 444 F. 2d 1097, 195 Ct. Cl. 356 (1971) ; *Iberia Air Lines of Spain v. Nationwide Leisure Corp.,* 408 F. Supp. 227 (E. D. N. Y. 1976) ; *McCulloch Internat'l Airlines v. Ann Storch Internat'l,* 13 Avi. 17,562 (S. D. N. Y. 1975). The courts in the *Iberia Airlines* and *McCulloch* cases placed particular emphasis

upon the fact that the cancellation provisions were not included in the carriers' tariffs on file with the CAB. Indeed, each of those courts acknowledged that where such provisions are on file (as in the case at bar):

> There can be no doubt that tariffs filed with the CAB, if valid, are conclusive and exclusive, and the rights and liabilities of the parties are governed thereby. [*McCulloch, supra* at 17,563]

and

> Where the claim is that a filed tariff is unreasonable in amount or unduly discriminatory, the agency with which the tariff is filed must make the first determination [*Iberia Air Lines of Spain, supra* at 224, citing *Dana v. Air France, supra,* and other authorities]

This court considers the CAB's own analysis of its jurisdiction in the *Ford* case to be more persuasive. In declaring that its jurisdiction encompasses the review of cancellation penalty provisions and requires that they be included in filed tariffs, the CAB distinguished the court decisions in *McCulloch* and *Northwest* as follows:

The carriers also seek support from two court cases: *McCulloch International Airways v. Anne Storch International,* 13 Avi. 17,562 (S. D. N. Y. 1975) and *Northwest Airlines v. United States,* 444 F. 2d 1097 (Ct. Cl. 1971). In *Northwest,* the Court of Claims found that the United States had to pay no show charges contained in a military charter contract notwithstanding the absence of such charges from the carrier's tariff. The court in *Northwest* reasoned that, where the contractual provision contains nothing inconsistent with the carrier's tariff and *where the only traveler concerned is a Government agency,* the requirement that tariffs contain in detail all charges is not so strong as to overcome the arm's length bargain reached by the parties. The court indicated that, "where the entire traveling public is concerned, there is every reason to require that a tariff set forth in detail the service charge for no shows."

Thus, as we read *Northwest,* cancellation charges are generally required to be included in tariffs; however, where the only traveler involved is the Federal Government, the failure to include cancella-

tion charges in a tariff does not render any such charge unenforceable so long as it is not inconsistent with the tariff.

In *McCulloch*, the court held on cross motions for summary judgment that, *inter alia*, a liquidated damages clause does not provide for a "charge" for air transportation within the meaning of Section 403, and need not have been part of the carrier's tariff to be enforced. *McCulloch* dealt solely with the issue of whether cancellation charges and provisions are covered by Section 403 and made no mention of the Board's power to issue regulations requiring filing of cancellation charges. As indicated above, Part 221 of the Board's Regulations embodies a requirement that cancellation provisions be included in carrier tariffs. We do not read *McCulloch* as precluding the Board from issuing such regulations, and thus, our ultimate conclusions are not inconsistent with that case. In any event, to the extent that *McCulloch* can be considered contrary to our conclusions in this order, we must respectfully disagree with that case.

*Ford Employees Recreational Ass'n, supra* at 4–5.

Admittedly, the CAB in the *Ford* case declined to intrude upon certain issues which it felt were best left for the courts to determine in private litigation. In the words of the Board:

We will, however, deny certain aspects of FERA's request that require resolution of factual and legal issues which are part of the underlying contract dispute and which the Board lacks authority to determine — namely, whether the facts at issue constitute an unauthorized cancellation under Article 3 of the contract; and, if so, whether World's alleged violation of Section 403 and/or Board's Regulations thereunder renders Article 3 of the contract unenforceable. [*Id.* at 4]

The first issue as to which the Board abstained in *Ford* is analogous to the First Count of the present complaint which this court has determined should be adjudicated here, not before the CAB. The second issue has no counterpart in the present litigation. As noted previously, the entire thrust of the second count of the complaint herein is that defendant's cancellation penalty provision (which the present defendant has filed with the CAB) is itself, on its face, "so unconscionable as to be void as against public policy." As noted previously in this opinion, such a question of uncon-

scionability is expressly encompassed within the statutory scheme depicting the CAB's jurisdiction. The CAB has particular expertise in this area and is charged with the making and enforcing of the "public policy" applicable thereto. See *Danna v. Air France, supra,* 463 *F.* 2d at 412–413, and all CAB Orders cited previously herein.

Thus, in the present case the charges in the second count may not be maintained in this court but must be submitted to the primary jurisdiction of the CAB. Defendant's motion to dismiss that count is granted. As noted previously, the first count states a simple cause of action in contract which is for this court, not the CAB, to adjudicate.