KEMPER INSURANCE COMPANIES, INC., Plaintiff,

v.

FEDERAL EXPRESS CORPORATION & Does (unidentified employees of Federal Express Corporation), Defendants.

Civil Action No. 99–11523–DPW.

United States District Court, D. Massachusetts.

Sept. 20, 2000.

118

·Robert J. Gallagher, Liese G. Howarth, Alan J. Howarth, Gallagher & Howarth, P.C., Haydenville, MA, for plaintiff.

Robert J. Maselek, Jr., Brody, Hardoon, Perkins & Kesten, Boston, MA, Steven C. Sharaf, Robert J. Maselek, Jr., Brody, Hardoon, Perkins & Kesten, Boston, MA, R. Jeffrey Kelsey, Federal Express, Legal Department, Memphis, TN, for defendants.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

An insurance company brings this action against an air carrier in connection with the theft of eight shipments of jewelry. The air carrier moved for dismissal and partial summary judgment enforcing its limitation of liability provision. At the hearing on that motion, I invited further briefing and plaintiff thereafter moved to amend its complaint to allege liability for four shipments as a motor carrier. I will allow the motion for dismissal and for partial summary judgement and deny the motion to amend as futile.

## I. RELEVANT FACTS

### A. The Parties

Plaintiff Kemper Insurance Companies, Inc. ("Kemper") is a corporation with a principal place of business in Summit, New Jersey.

Defendant Federal Express Corporation ("FedEx") is a corporation with its principal place of business in Memphis, Tennessee. Defendants Does are unidentified FedEx employees who are alleged to have stolen the shipments forming the basis of this dispute.

### B. The Shipments.

This dispute involves eight packages of jewelry that were shipped via FedEx by various shippers, subrogees of Kemper. The shippers used FedEx's Powership System which permits self-invoicing and generation of shipping labels by FedEx's customers. In its amended complaint Kemper asserts that four of the packages did not move by air but rather were transported by motor carrier.

A shipper can enter the following information into the Powership System: recipient's name and address, the FedEx service desired, the number and weight of the package, and a declared value. It is undisputed that none of the shippers declared a value for any of the shipments and that the shipments were never delivered. FedEx is prepared to pay $100.00 per shipment, the maximum liability under FedEx's contract of carriage.

### C. The Contract of Carriage

FedEx's contract of carriage consists of the Master Powership Agreement ("Agreement") and Service Conditions contained in the applicable FedEx Service Guide ("Service Guide"), incorporated by reference into the Agreement. The Powership Agreement reads in part:

> **Section 10. Terms and Conditions of Carriage.**
>
> Customer agrees that carriage by FedEx of any shipments tendered pursuant to this Agreement shall be in accordance with terms, conditions and limitations of liability contained in the Service Guide. Customer agrees to comply in all respects with terms and conditions of the Service Guide, which is incorporated into this Agreement by reference.... Our liability for loss, damage, delay, mis-delivery or non-delivery of your shipment or for misinformation or failure to provide information is limited. You may declare a higher value. Consult the Service Guide for details.

(Master Powership Agreement, ¶ 10, Ex. 1, C.)

The applicable sections of the Service Guide provide:

**Declared Value and Limits of Liability**

A. The declared value of any shipment represents our maximum liability in connection with a shipment, including, but not limited to any loss, damage, delay, misdelivery, nondelivery, misinformation or any failure to provide information.

Exposure to and risk of any loss in excess of the declared value is either assumed by the shipper or transferred by the shipper to an insurance carrier through the purchase of an insurance policy. You should contact an insurance agent or broker if insurance coverage is desired. WE DO NOT PROVIDE INSURANCE COVERAGE OF ANY KIND.

B. Our liability with regard to any package is limited to the sum of $100 unless a higher value is declared on the airbill for the package at the time of tender, and a greater charge paid as provided ... below.

...

D. Except as limited below ..., the maximum declared value per package ... is $50,000.... If no value is declared, the declared value and our liability will be limited to the actual value or $100, whichever is less.

...

F. Packages containing following items of extraordinary value are limited to a maximum declared value of $500:

. . .

4. Jewelry, including, but not limited to, watches . . . , precious and semi-precious gems or stones . . .

. . .

ANY EFFORT TO DECLARE A VALUE IN EXCESS OF THE MAXIMUMS ALLOWED IN THIS SERVICE GUIDE IS NULL AND VOID

. . .

(Def.'s Exs., Ex. 1, B at 88–89.)

The Service Guide further provides:
WE WILL NOT BE LIABLE FOR ANY DAMAGES, WHETHER DIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL, IN EXCESS OF THE DECLARED VALUE OF A SHIPMENT, WHETHER OR NOT WE KNEW OR SHOULD HAVE KNOWN THAT SUCH DAMAGES MIGHT BE INCURRED, INCLUDING, BUT NOT LIMITED TO, LOSS OF INCOME OR PROFITS.

### D. Procedural History

Kemper filed this suit in Suffolk Superior Court on May 10, 1999. FedEx removed the case to this court on July 15, 1999, on the basis of diversity and federal question jurisdiction. In its initial complaint, Kemper sought to impose liability against FedEx under several legal theories, including: conversion as to the Does and FedEx (Counts I and II); breach of contract (Count III); voidability of FedEx's limitation of liability (Count IV); vicarious liability for Does' intentional torts (Count V); negligent hiring of employees (Count VI); negligent retention of employees (Count VII); and negligent control and supervision of employees (Count VIII).

Before me is FedEx's motion to dismiss Counts I, II, IV, V, VI, VII, and VIII of Kemper's Complaint and its motion for partial summary judgment as to Count III.

Kemper has since moved to amend its complaint seeking to modify its claims.[1] Kemper asserts that FedEx's limitation of liability is invalid because FedEx materially breached the contract (Count II), that FedEx was willful and wanton in its failure to prevent theft by its employees (count III), and that for four shipments FedEx's limitation of liability is invalid under the Carmack Amendment, 49 U.S.C. § 14706(c) (count IV).

This case turns upon the enforceability of the limitation of liability provision. The parties dispute the applicable principles under the Airline Deregulation Act ("ADA") and the motion to amend the complaint raises the potential application of the Carmack Amendment.

## II. THE INITIAL COMPLAINT

### A. Tort Claims (Counts I, II, V, VI, VII, VIII)

FedEx argues that Kemper's tort claims are preempted by the ADA. In the alternative, FedEx argues that under federal common law its liability is limited, and that Kemper may not avoid this liability limitation by recasting its claims as tort actions. Kemper replies that its tort claims are not preempted by the ADA because theft of cargo by FedEx's employees is not related to any service offered by an air carrier. Kemper further argues that the term "loss" in the airbill does not incorporate theft of cargo, making the limitation of liability provision of the contract not applicable to its tort claims.

The Fifth Circuit in *Sam L. Majors v. ABX, Inc.*, 117 F.3d 922 (5th Cir.1997), noted that in enacting the ADA, Congress added a savings clause providing that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Chapter are in addition to such remedies." *Id.* at 928, citing 49 U.S.C.App. § 1506[2]. Because prior to de-

---

1. *See* note 3 *infra.*

2. This provision is now found at 49 U.S.C. § 40120(c).

regulation, federal common law governed lost shipment claims, the savings clause acted to preserve the application of the federal common law. *Majors*, 117 F.3d at 928; *but see Greer v. Federal Express*, 66 F.Supp.2d 870, 873 (D.Ky.1999). I concur with the reasoning of the *Majors* court that the savings clause of the ADA preserved the applicability of federal common law regarding suits against common carriers for lost shipments. *See First Pennsylvania Bank v. Eastern Airlines*, 731 F.2d 1113 (3d Cir.1984) (holding that federal common law doctrine governed suit against common carrier that lost cargo). Thus, where a claim is for lost or damaged shipments, federal law controls.

■ I view the circumstances of this case, the allegations of thefts notwithstanding, to fall into the category of lost shipments. In the event of such loss, the contract limited FedEx's liability. Specifically, the Powership Agreement stated, "[o]ur liability for loss, damage, delay, misdelivery or non-delivery of your shipment or for misinformation or failure to provide information is limited." I turn to federal law to examine Kemper's claim that the term "loss" does not incorporate theft, rendering the limitation of liability inapplicable to its tort claims.

■ Under federal law, a liability limitation provision may reach even willful misconduct as long as the defendant did not convert the misappropriated property to its own use or gain. *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1366 (9th Cir.1987) (holding that under federal common law, "only an appropriation of property by the carrier for its own use will vitiate limits on liability"). Consequently, if a liability limitation is valid, recovery for loss cannot exceed the limitation regardless of the degree of the carrier's negligence, absent a showing of appropriation for its own use. Kemper has not demonstrated appropriation by FedEx to invalidate the liability limitation. Thus, Kemper is limited to the $100 liability limitation per shipment contained in the airbill. Kemper cannot avoid this limitation by recasting its claims

as tort actions. For these reasons, I will grant FedEx's motion for dismissal of the tort counts.

## B. Breach of Contract Claims (Counts III & IV)

### 1. Federal Law Applies

■ The question whether the contract between the parties should be enforced with the limitation of liability provisions (Count III) or whether the limitation of liability is void as against public policy (Count IV) turns upon federal law. The Supreme Court in *American Airlines v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), outlined the limits on state law when the contract of an air carrier is at issue. In *American Airlines v. Wolens*, the Supreme Court held that the ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, § 1106 (preserving "the remedies now existing at common law or by statute"),

> stops States from imposing their own substantive standards with respect to rates, routes or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Wolens*, 513 U.S. at 232, 115 S.Ct. 817.

A court deciding when air carriers may contractually limit their liability for loss of or damage to shipped cargo does not, of course, face a routine contract claim like the one presented to the Court in *Wolens*. In *Read–Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1197 (9th Cir. 1999), the Ninth Circuit observed:

> Deciding whether a limited liability provision is enforceable is a matter of 'substantive standards' and 'policies external

to the agreement.' ... Because the imposition of state standards to decide whether contractual limits on liability are enforceable is contrary to the language, intent, and purpose of the federal policy embodied in the ADA, we apply the federal common law to this question. *Read–Rite,* 186 F.3d at 1197; *see also Reece v. Delta Air Lines,* 731 F.Supp. 1131 (D.Me.1990) (applying federal common law to air waybill limiting carrier's liability).

## 2. FedEx's Limitation of Liability is Valid (Count III)

■ Under the federal common law, carriers may limit their liability to the value of the shipment if (1) the shipper has reasonable notice of the rate structure and (2) is given the option to pay a higher price for greater protection. *See Hill Constr. v. American Airlines, Inc.,* 966 F.2d 1315, 1317 (1st Cir.1993). The federal common law requirement that the carrier give the shipper an option of greater protection in order to limit its liability validly is called the "released value doctrine." *See Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1365 (9th Cir.1987); *Neal v. Republic Airlines, Inc.,* 605 F.Supp. 1145, 1148 (N.D.Ill. 1985). "When the facts of a case satisfy the released value doctrine, courts look to the contract language to determine the rights of the parties." *Reece,* 731 F.Supp. at 1134, citing *Neal,* 605 F.Supp. at 1148; *see also Read–Rite,* 186 F.3d at 1197 (stating "[o]nce it is determined that a limited liability clause is enforceable under federal common law, then the precise content of the contractual clause is a matter of 'the parties' bargain' to which state contract law applies").

■ Limited liability provisions are prima facie valid if the face of the contract recites the liability limitation and the "means to avoid it." *Read–Rite,* 186 F.3d at 1198, citing *Royal Ins. Co. v. Sea–Land Service Inc.,* 50 F.3d 723, 727 (9th Cir. 1995). The burden then shifts to the shipper to prove that it did not have a "fair opportunity" to purchase greater liability coverage. *Read–Rite,* 186 F.3d at 1198.

■ The contract of carriage between FedEx and the shippers consists of the Powership Agreement and the provisions of the Service Guide incorporated by reference into the Agreement. The limits on liability are clearly recited in the contract; indeed Kemper makes no notice argument. Kemper argues, instead, that because FedEx limits its liability for jewelry to $500, a shipper has no opportunity, much less a fair opportunity, to purchase higher liability. Because the Service Guide, as quoted above, clearly states that any effort to declare a value in excess of the maximum allowed is null and void, FedEx offers no terms under which a shipper could hold FedEx liable for the full value of jewelry valued over $500. Plaintiff argues that this choice of limitations of liability, either $100 or a declared value up to $500, is insufficient under the released value doctrine because it provides no opportunity to "insure" for the full value of the jewelry through FedEx.

Kemper, however, has misconstrued the released value doctrine. It does not require the carrier to accept liability for the full value of all goods it transports. Rather, it requires that the carrier provide a "bona fide alternative" that gives greater protection than the lower limitation. *First Pennsylvania,* 731 F.2d at 1117. In the leading First Circuit case, *Hill Construction,* the court held that "[w]here air carriage contracts set forth limitations on carrier cargo liability in a 'reasonably communicative' form and offer the shipper a choice of paying a higher rate for greater protection, federal courts have normally found those limitations lawful." *Hill Construction,* 996 F.2d at 1317.

■ It is true that in some formulations of the doctrine, courts have made reference to the requirement that carriers provide an option of declaring "full" value, and of receiving "unlimited" liability. *See, e.g., Quasar Co. v. Atchison,* 632 F.Supp. 1106, 1114 (N.D.Ill.1986) ("At a minimum, a full value rate for a deregulated service must actually be available so the shipper

can make a choice. Otherwise the liability limitation is unenforceable."); *Hollingsworth & Vose Co. v. A–P–A Transportation Corp.*, 158 F.3d 617 (1st Cir.1998) (to validly enforce a liability limitation, a shipper must "also make[ ] an unlimited liability rate available to the shipper...."). However, an arguable obligation to provide the option of declaring the "full" value of goods and paying a higher rate to have "unlimited" liability has never been held to bar a company from capping the highest valuation for which it would accept liability. That is, no court has ever held that a company cannot limit its liability, even as to the "declared value," if it clearly states that it will not accept a valuation above a certain limit, either for some or all goods. The courts that have used the language of "full" value, and "unlimited" liability appear on close examination to have used that language interchangeably with the language of "higher" value and greater amounts of liability, and do not appear to have intended to imply that the carrier cannot limit the amount a shipper may declare under the declared value option. To the degree that these courts intended the terms "unlimited" and "full" to prohibit a carrier from placing any ceiling on the value of goods for which it must accept liability, they have overstated the doctrine and I decline to follow them.

In fact there are numerous cases in which courts have enforced tariffs or contracts that limited the value that a shipper could declare, for some or all goods, and therefore effectively limited their liability, even for the higher level of protection. Kemper argues that in each case in which a court has held valid a cap on the valuation of the declared value option, the carrier has refused to accept the goods valued higher than the cap. *See First Pennsylvania Bank v. Eastern Airlines Inc.*, 731 F.2d 1113, 1118 (3d Cir.1984); *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1316 (9th Cir.1977); *Universal Computer Systems, Inc. v. Allegheny Airlines, Inc.*, 479 F.Supp. 639, 641 (M.D.Pa.1979). While in each of these cases, the carrier purported to refuse to accept goods that had a value greater than its cap, closer examination demonstrates these cases support the proposition that actual refusal is not a requirement for a valid declared value cap.

In *Klicker*, for example, the carrier's liability was limited to $500, unless the shipper declared a higher value (and paid the corresponding higher rate), but in no case could the declared value exceed $5,000. The tariff at issue stipulated that " 'No participating carrier will accept for transportation or for storage personal property, including baggage, the declared value of which exceeds . . . (for Northwest) . . . $5,000.' " *Klicker*, 563 F.2d at 1316. However, immediately after reciting the tariff language, the court observed that "[the language quoted above] functions merely as a ceiling on valuations declared pursuant to Rule 370A [the rule that allows a shipper to declare a value higher than $500]." In other words, the court interpreted the right to refuse to accept goods as simply a means to signify a cap on the declared value at some amount meaningfully higher than the ordinary limitation of liability, but not at the full value, no matter how high. It did not require that the carrier actually refuse to transport goods of higher value.

In *Universal Computer Systems*, the applicable tariff stated that the ordinary limitation of liability was $50, unless a shipper declared a higher value. But the ability to declare a higher value was capped at $500. In this case, as Kemper points out, the tariff stipulated that "[s]hipments with a declared value in excess of $500.00 are not acceptable for transportation under this tariff." *Universal Computer Systems*, 479 F.Supp., at 641. However, in the "airbill" (the contract between the shipper and the carrier, and presumably the document that gives the shipper the best notice of its ability to opt out of the lower limitation of liability) the two options were described, including the $500 cap on the higher declared value liability, but nowhere was the

refusal to accept goods in excess of that value for shipment mentioned.

In *First Pennsylvania,* the same tariff as in *Universal Computer Systems* applied, and the carrier's airbill was the same as well. In both cases the tariff recited that goods of value in excess of the declared value cap of $500 may not be transported, and in both cases the airbill made no mention of the carrier's refusal to transport goods of excess value. Therefore the declared value cap served simply to limit liability to $500, the maximum amount a shipper was permitted to declare. In *First Pennsylvania,* the court found the carrier's limitation of liability was valid under the released value doctrine.

It is further worth mentioning that when, as in the present case, shippers are given the opportunity to purchase private insurance, and in fact do so rather than opting for more expensive coverage by the carrier, the liability limitation is viewed in an even more generous light. As Judge Leisure held, in a case strikingly similar to the present case, three factors are relevant to whether a carrier has effectively limited its liability: 1) adequate notice, 2) sophistication of parties, and 3) "the availability of 'spot' insurance to cover a shipper's exposure." *United States Gold Corp. v. Federal Express Corp.,* 719 F.Supp. 1217, 1225 (S.D.N.Y.1989). The Ninth Circuit has been even more forceful in articulating the relevance of private insurance to the released value doctrine:

> The function of the federal common law rule requiring notice of limited liability is to ensure that the shipper has an opportunity to make an informed choice between, on the one hand, shipping at a lower cost with limited liability, and, on the other, *separately purchasing insurance* or shipping at a higher cost without limited liability.... *The separate purchase of insurance simply cannot be reconciled with a contention that the shipper has been disadvantaged* by a lost opportunity to pay the carrier more money in return for greater coverage.

*Read–Rite Corp.,* 186 F.3d, at 1198 (emphasis added).

Here, the shipper not only had the opportunity to insure privately, but chose to do so rather than pay the higher declared value fee. The fact that the shipper had adequate notice, opportunity to purchase a higher level of liability from FedEx (capped at $500), and the opportunity to purchase private insurance if the liability cap was insufficient for the shipper's purposes, suggest that in this case the goals of the released value doctrine have been met. I conclude that the limited liability provisions of the contract are enforceable and will grant FedEx's motion for partial summary judgment as to Count III.

### 3. The Limitation of Liability Provision is Not Voidable as Against Public Policy (Count IV)

■■■ Count IV of Kemper's complaint seeks to set aside the liability limitation in FedEx's contract of carriage because the shipments were stolen by FedEx employees. Enforcement of the contract under these circumstances, Kemper asserts, would be against public policy. Because Kemper's argument seeks to enlarge the contract terms through reliance on policies beyond the contract itself, the claim is preempted by the ADA. *Wolens,* 513 U.S. at 232, 115 S.Ct. 817. As the First Circuit has noted, "balancing advantages and disadvantages, both Congress and the courts have approved the use of such [limitation of liability] clauses." *Hill Construction,* 996 F.2d at 1317. Accordingly, I will grant FedEx's motion for dismissal of Count IV.

### C. Claims Against Does (Unidentified Employees)

■■■ The claims must be dismissed without prejudice against the unidentified employees of FedEx who allegedly stole the jewelry in question. The Federal Rules of Procedure make no mention of mechanisms for pleading against unnamed parties through the use of the legal fiction of John Doe or Jane Roe. Of course, this

fiction has been allowed in order to proceed against parties who are not known at the time the complaint is filed, but whose identities may be learned through the discovery process. *See, e.g., Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). "As Bivens ... recognize[s], when, as here, a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court." *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir.1980). However, the Doe fiction may only be used until such time as the actual identities can be learned. "Fictitious parties must eventually be dismissed, if discovery yields no identities." *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D.Pa.1990). *See also, e.g., Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980). Here, the plaintiff has not identified the unnamed parties nor is there any prospect it will do so in this litigation; therefore its claims against them are hereby dismissed without prejudice.

## III. THE PROPOSED AMENDED COMPLAINT

Kemper has filed a motion to amend its complaint to include three additional issues.[3] Kemper argues that 1) FedEx's limitation of liability has been rescinded because FedEx materially breached the shipping contract when its employees allegedly stole the packages; 2) FedEx's limitation of liability is invalid because it acted willfully and intentionally to permit its employees to steal; and 3) because some shipments traveled by truck, the contract is controlled by the Carmack Amendment, 49 U.S.C. § 14706(c). I find that none of these charges have merit, and therefore deny the motion to amend as futile.

---

**3.** Kemper has also offered some amendments to Counts I (Conversion as to Does) and III (Breach of Contract) from the original complaint as new Counts V and I. These proposed

## A. Recission of Limitation of Liability Due to Material Breach (Count II)

 Kemper argues that FedEx's limitation of liability ought to be rescinded because the alleged conversion of goods by FedEx employees constituted a material breach of the shipping contract. Kemper cites *Hill Construction*, 996 F.2d at 1319, for the proposition that a limitation of liability shall be rescinded when "transportation related circumstances" arise which fall outside the expectations of the parties. In *Hill Construction*, the First Circuit reversed the District Court's finding that a limitation of liability was invalid. At best, *Hill Construction* can be read to support the proposition that a limitation of liability in a shipping contract may not be valid if "the carrier made a special separate promise to the shipper," *id.* at 1319, which it then breached. In this case, as in *Hill Construction*, no "special separate promise" was made. Rather, FedEx attempted to limit its liability for a wide range of eventualities; the shippers accepted the limitation of liability and insured their shipments with Kemper to protect themselves against loss. Even conversion by employees of FedEx falls within this umbrella limitation of liability, and therefore the "material deviation doctrine" is inapplicable here.

## B. Willful and Wanton Misconduct (Count III)

 Plaintiff has alleged in its Motion to Amend that because FedEx behaved in a willfully and wantonly negligent fashion, its waiver of liability is not valid under federal law against a claim of conversion. Indeed, a carrier, air or other, that has converted goods to its own use, cannot enforce a limitation of liability. *See, e.g., Deiro*, 816 F.2d at 1366. There is even some support for the proposition that a carrier that has behaved willfully and

modifications do not materially change the original complaint sufficient to warrant discussion.

intentionally may be unable to assert its limitation of liability. *See T.B.I. Industrial Corp. v. Emery Worldwide*, 900 F.Supp. 687, 693–94, (S.D.N.Y.1995) citing *U.S. Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1225–26 (S.D.N.Y.1989).[4] I take the court's discussion of willful and intentional misconduct in *U.S. Gold* to be a gloss on the exception to the released value doctrine for carriers that have converted property to their own use. However, dicta in these two cases from the Southern District of New York does not overcome direct holdings constituting persuasive precedent from other circuits. In *Neal*, Judge Shadur held that "[w]here interstate carriage is concerned, only an appropriation of property by the carrier for its own use is sufficient to get around limits on liability. Wilful misconduct is not enough." *Neal*, 605 F.Supp. at 1149, n. 3. In *Glickfeld v. Howard Van Lines, Inc.*, the Ninth Circuit held that "the cases are uniform in holding that the conversion doctrine is only pertinent when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability where the conversion is by third parties or even by its own employees." *Glickfeld*, 213 F.2d 723, 727 (9th Cir.1954). Even if there could be some level of willful and intentional conduct by a carrier that would be so egregious as to rise to the level of conversion for its own use, I take the bar to be very high. Kem-

per has not set forth facts sufficient to support such a claim and meet this burden.

## C. Carmack Amendment (Count IV)

Plaintiff argues that if the deliveries were actually made by truck, rather than air, the agreement would be governed by the Interstate Commerce Act, specifically the Carmack Amendment, 49 U.S.C. § 14706 (1997), rather than the APA. However, because the requirements for limiting liability under the Carmack Amendment are materially the same as under the APA, I hold that the motion to amend to raise this issue is futile.

■ Under the Carmack Amendment "a carrier is fully liable for the actual loss or injury to the property, unless it takes specific actions to limit its liability." *Camar Corp. v. Preston Trucking Co., Inc.*, 221 F.3d 271, 275 (1st Cir.2000). Thus a carrier governed by the Carmack Amendment may not limit its liability at will. Rather, "only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained...." *Hollingsworth & Vose Co. v. A–P–A Transportation Corp.*, 158 F.3d 617, 619–20 (1st Cir.1998) quoting *New York, New Haven & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 135–36, 73 S.Ct. 986, 97 L.Ed. 1500 (1953).[5] The court in *Hollingsworth* went

4. The other cases cited by the plaintiff, *Thompson v. National Railroad Passenger Corp.*, 621 F.2d 814 (6th Cir.1980), *Uhlik v. Penn. Central Railroad Co.*, 459 F.2d 460 (6th Cir.1972), *Mitchell v. Union Pacific Railroad Co.*, 242 F.2d 598 (9th Cir.1957), *Martin v. Greyhound Corp.*, 227 F.2d 501 (6th Cir.1955), are inapplicable here, not because they relate to railroad or bus services, as suggested by the defendant, but because they are not on point. In *Mitchell* and *Uhlik*, the plaintiffs allege willful and wanton misconduct, but the courts did not reach the merits of their claims, because they based their rulings on other grounds. *Thompson* and *C.G. Martin* involved the ability of common carriers to limit their liability for personal injuries to paying passengers. Under federal common law, common carriers could not limit their

liability for the personal injury of their paying passengers. The instant case, however, involves the released value doctrine, an exception to the rule that common carriers cannot limit their liability, and thus these cases are not applicable.

5. In *Camar Corp*, at 275–76, the First Circuit reaffirmed its commitment to the holding of *Hollingsworth*, 158 F.3d, that the existence of a proper bill of lading is sufficient notice of a limitation of liability. In *Camar*, as distinguished from *Hollingsworth*, no formal bill of lading was issued, and thus no sufficient notice was given of the limitation of liability. In the instant case, airbills were issued in which the shippers opted not to declare a value for the goods shipped.

on to state that "[t]his 'fair opportunity' language ... has taken on a life of its own, and later circuits have treated the rubric almost as if it were an independent requirement of the Carmack Amendment." *Id.*, at 620.

 This "independent requirement" of the Carmack Amendment has, however, the same contours as the "released value" doctrine under federal common law, *see* discussion *supra* section II(B)(1), which has been held to apply not only to motor carriers (which are bound by the I.C.A.), but to all common carriers including airlines. Therefore, for present purposes, it does not matter whether the Carmack Amendment or the APA applies. In either circumstance, federal law applies, and the released value doctrine, or its functional equivalent, controls. The Plaintiff's claim that if the Carmack Amendment applies, the Defendant's limitation of liability is "void ab initio," is simply incorrect.

While motions to amend are treated liberally in this Circuit, a court may deny them if, as a matter of law, amendment would be futile. *See Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 792 (1st Cir.1995). In this case, Kemper's motion to amend the complaint to allege violations of the Carmack Amendment is futile as a matter of law, because the standard applied to a motor carrier under the Carmack Amendment is for present purposes materially the same as the standard applied to air carriers under federal common law. Therefore, I do not reach the issue of whether FedEx should be treated as an air carrier or motor carrier for the purposes of the Carmack Amendment when it transports goods entirely by truck.

## IV. CONCLUSION

For the reasons set forth more fully above, I hereby ALLOW Defendant Fedex's motion to dismiss and for partial summary judgment and DENY Plaintiff Kemper's motion to amend. I DISMISS the claims against the Defendant Does without prejudice

The clerk, upon certification from FedEx that it has tendered the limitation amount to Kemper, is directed to enter final judgment for Kemper in the amount of $800 on Count III of the original complaint.