# United States Court of Appeals
## For the First Circuit

---

No. 00-2300

KEMPER INSURANCE COMPANIES,

Plaintiff, Appellant,

v.

FEDERAL EXPRESS CORPORATION,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

---

Before

Torruella, Chief Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Robert J. Gallagher, with whom Liese G. Howarth, Alan J. Howarth and Gallagher & Howarth, P.C., were on brief, for appellant.
R. Jeffery Kelsey, with whom Steven C. Scharaf, Dedire Brennan Regan, Robert John Maslek and Brody Hardoon Perkins & Kesten, were on brief, for appellee.

---

June 12, 2001

**TORRUELLA, <u>Chief Judge</u>.**  This appeal involves eight packages of jewelry shipped by defendant-appellee Federal Express ("FedEx"). The shipper, Holmes Protection Group, Inc. ("Holmes"), purchased third-party insurance from plaintiff-appellant Kemper Insurance Companies, Inc. ("Kemper").  Kemper, as subrogee, sought to invalidate the $100 limitation of liability provided for in the relevant shipping documents.  The district court concluded that the limitation of liability was valid, and that attempts by Kemper to amend its complaint to include: (i) claims under the Carmack Amendment, 49 U.S.C. § 14706; and (ii) claims of willful and wanton misconduct, were futile.  <u>Kemper Ins. Cos.</u> v. <u>Fed. Express Corp.</u>, 115 F. Supp. 2d 116 (D. Mass. 2000). For the reasons herein, we affirm.

## BACKGROUND AND PROCEDURAL HISTORY

The relevant facts in this appeal are undisputed, with one exception, which we note below.

Holmes tendered eight packages containing jewelry to FedEx between June 26 and December 22, 1998.  Seven of the packages never reached their destination; one arrived empty.  Each of the packages was sent under FedEx Master Powership Agreements, which note that FedEx limits its liability in a manner described in its Service Guide.  The Service Guide, in turn, explains that "liability with regard to any package is limited to the sum of $100 unless a higher value is declared on the airbill for the package at the time of tender, and a greater

charge paid as provided . . . below." For most types of goods, FedEx allows shippers to declare a value up to $50,000. However, for "items of extraordinary value," including jewelry, the maximum declared value is limited to $500. Moreover, the shipping agreement provides that "any effort to declare a value in excess of the maximums allowed in this service guide is null and void," and disclaims any liability "in excess of the declared value of a shipment." No value was declared for any of the shipments in question.

Kemper, acting in its capacity as subrogee to Holmes, brought claims against FedEx sounding in tort and contract. FedEx moved to dismiss the tort claims as preempted by the Airline Deregulation Act (ADA). Although the district court held that the savings clause of the ADA preserved federal common law remedies in tort for lost shipments, id. at 120-21, it concluded that the airbill limited FedEx's liability to $100 per shipment, that Kemper could not "avoid this limitation by recasting its claims as tort action," id. at 121, and therefore granted the motion to dismiss.

With respect to the claims sounding in contract, the district court determined that under applicable federal common law, specifically the "released value doctrine," the FedEx limitation of liability provision was valid because it allowed the shipper to increase FedEx's exposure to $500 by declaring a higher value and paying a correspondingly higher shipping fee. Id. at 122-24. Moreover, the

-4-

district court noted that limitations of liability are viewed in a particularly generous light when the shipper chooses to take out private insurance, as did Holmes in this case. Id. at 124. The court therefore dismissed Kemper's claim seeking to void the limitation on liability as contrary to public policy, id., and granted FedEx partial summary judgment on the breach of contract claim based on the $100 limitation of liability, id.

Kemper also sought to amend its complaint in two ways which, it contended, would provide legal support for invalidation of the limitation clause without reliance on the released value doctrine. First, Kemper claimed that because four of the eight packages traveled entirely by truck (instead of by air),[1] the Carmack Amendment's allegedly stricter standard made the limitation on liability invalid with respect to those four packages. The district court did not determine whether the Carmack Amendment applied, instead concluding that because the contours of the Carmack Amendment mirrored those of the released value doctrine, Kemper's desired amendment was futile. Id. at 126-27. Second, Kemper sought to amend its complaint to include claims of willful and wanton misconduct on the part of FedEx. Kemper alleged that FedEx had been aware of, and ignored, the repeated theft of valuable shipped goods by employees. Kemper argued that FedEx's

---

[1] FedEx does not concede that the four packages in question traveled only by truck. As we explain, this factual dispute is ultimately irrelevant to the disposition of this appeal.

-5-

knowledge of rampant employee theft and lack of meaningful effort to prevent future thefts from occurring constituted willful and wanton misconduct, and that the conversion exception to the released value doctrine should apply.[2] The district court held that even if the exception included a "level of willful and intentional conduct . . . so egregious as to rise to the level of conversion for [a carrier's] own use," Kemper had not alleged sufficient facts to reach such a level. Accordingly, the court refused to allow the amendment to the complaint because it would have been futile to do so. Id. at 125-26.

## DISCUSSION

Our review of a grant of summary judgment is de novo, with all material facts viewed in the light most favorable to the opposing party. Campbell v. Washington County Technical Coll., 219 F.3d 3, 5 (1st Cir. 2000). We review the denial of a motion to amend a complaint for abuse of discretion. Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).

## I. Federal Common Law and the Released Value Doctrine

When a shipper (or, as here, a subrogee standing in place of a shipper) contests the validity of a contractual clause that limits an

---

[2] A carrier that has converted goods to its own use cannot enforce an otherwise valid limitation on liability. See, e.g., Deiro v. Am. Airlines, Inc., 816 F.2d 1360, 1366 (9th Cir. 1987).

-6-

air carrier's liability,[3] we apply federal common law.  See Hill Constr. Corp. v. Am. Airlines, Inc., 996 F.2d 1315,  1317 (1st Cir. 1993) (citing cases applying federal law); Diero v. Am. Airlines, Inc., 816 F.2d 1360, 1365-66 (9th Cir. 1987);  First Pa. Bank, N.A. v. E. Airlines, Inc., 731 F.2d 1113, 1115-16 (3d Cir. 1984).  Although traditional common law forbade a carrier from disclaiming liability for its own negligence, First Pa. Bank, 731 F.2d at 1116, the released value doctrine allows an air carrier to "limit [its] liability for injury, loss, or destruction of baggage on a 'released valuation' basis."  Diero, 816 F.2d at 1365 (citing Klicker v. Northwest Airlines, 563 F.2d 1310, 1315 (9th Cir. 1977)).  In exchange for a lower shipping rate, the shipper is deemed to have released the carrier from liability beyond a stated amount.  Id.  However, the shipper is bound by this agreement only if (i) he has reasonable notice of the rate structure and (ii) he is given a fair opportunity to pay a higher rate in order to obtain greater protection.  Id.; see also New York, N.H. & Hartford Rail Co. v. Nothnagle, 346 U.S. 128, 134-36 (establishing doctrine for common carriers); Hill, 996 F.2d at 1317; First Pa. Bank, 731 F.2d at 1117.

---

[3]  Both sides agree that FedEx qualifies as an "air carrier" under federal law.  See 49 U.S.C. § 40102(a)(2).  However, Kemper alleges that four of the packages traveled solely by ground transportation, and that FedEx should not be treated as an air carrier with respect to those packages.  See infra Part II.

Kemper concedes that the shipper, its insured, had reasonable notice of the limitation of liability. However, it contends that the FedEx rate structure is not one that gives the shipper "a fair opportunity to pay a higher rate in order to obtain greater protection." Diero, 816 F.2d at 1365. Kemper argues that the contractually allowed increase to $500 of coverage is an insufficient difference to provide a "fair opportunity," especially when the $500 limit applies only to goods of "extraordinary value" such as jewelry, which are by definition worth significantly more than that limit.

This Court has noted that "[w]here air carriage . . . offer[s] the shipper a choice of paying a higher rate for greater protection, federal courts have normally found those limitations lawful." Hill, 996 F.2d at 1317 (citing numerous cases). Although we have not had the opportunity to determine when an alternative liability limit is sufficiently high so as to provide a "fair opportunity" to the shipper, other courts have upheld contractual limitations of a similar magnitude to the one at issue here. First Pa. Bank, 731 F.2d at 1118 (choice between $50 and $500); see also United States Gold Corp. v. Fed. Express Corp., 719 F. Supp. 1217, 1219 & 1225-26 (S.D.N.Y. 1989) (choice between $100 and $500); Universal Computer Sys., Inc. v. Allegheny Airlines, Inc., 479 F. Supp. 639 (M.D. Pa. 1979) (choice between $50 and $500); Klicker, 563 F.2d at 1314-16 (choice between $500 and $5000). Notably, Kemper has not cited, nor have we

discovered, any case in which a court invalidated a contract providing two discrete levels of coverage.[4] We are loath to police this line when other courts have chosen not to do so.

Kemper seeks to distinguish the above precedent by pointing out, correctly, that the relevant contractual provisions in these cases provided that the carrier would not accept goods with a declared value above the higher limitation. See First Pa. Bank, 731 F.2d at 1118 ("Shipments with a declared value in excess of $500.00 are not acceptable for transportation under this tariff."); Klicker, 563 F.2d at 1316 ("No participating carrier will accept [property], the declared value of which exceeds . . . $5,000."); Universal Computer, 479 F. Supp. at 641 ("Shipments with a declared value in excess of $500.00 are not acceptable for transportation under this tariff."). By contrast, not only did the FedEx contract in question not contain such a provision, but the record shows that FedEx actively solicited the carriage of jewelry clearly worth more than $500.

We are not convinced that this distinction makes a difference. First, the cases upholding limitations on liability did not rest their holdings on the fact that the carriers could refuse goods valued at more than the maximum amount. Second, the fact that

---

[4] Kemper contends that this logic would approve of an option providing only an extra dollar of liability. We doubt that it carries that far; at any rate, we agree with the district court that in this case, $500 is opportunity enough.

FedEx did not retain the ability to reject packages with a declared value of more than $500 does not mean that the $500 limit did not provide shippers with a fair opportunity to increase their coverage by paying a higher rate; it only meant that they could not necessarily insure their packages at full value through the carrier.  Kemper has conceded that the released value doctrine does not require carriers to offer a full value rate.

Moreover, the fact that third-party insurance was available, and was purchased by the shipper, counsels against invalidating the limitation on liability.  "[A shipper] cannot contend that it was not given a 'fair opportunity' to opt for higher coverage [when that shipper] did opt for higher coverage when it insured [its package] through an independent entity." Vision Air Flight Serv., Inc. v. M/V Nat'l Pride, 155 F.3d 1165, 1169 (9th Cir. 1998); see also Travelers Indem. Co. v. Vessel Sam Houston, 26 F.3d 895, 900 (9th Cir. 1994) (deliberate choice to opt-out of higher coverage indicates existence of a fair opportunity).  This is especially true when the plaintiff is not the shipper itself, but the subrogated third-party insurer of the package.  In such a case, "it is always in the best interest of a shipper's insurance company to argue that the shipper was denied a fair opportunity to opt for higher liability. . . .  'As best we can tell, [the insurer] is now bringing this lawsuit in an attempt to shift . . . the burden of loss it was paid to insure.'" Travelers Indem., 26 F.3d

-10-

at 900 (citing Carman Tool & Abrasives, Inc. v. Evergreen Lines, 871 F.2d 897, 901 n.10 (9th Cir. 1989)). "The [third-party] insurer merely stands in the shoes of the shipper, however, and cannot argue as if the shipper did not make the decision to insure separately." Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190, 1199 n.4 (9th Cir. 1999).

Lastly, we must point out that Kemper is in no way harmed by this type of limitation clause; in fact, it is the very existence of such a limitation that allows Kemper to market third-party package insurance. If FedEx altered its contracts to offer the type of first-party insurance suggested by Kemper, a shipper would either choose to insure through FedEx and not purchase supplementary insurance from Kemper, or would choose the lower released value and purchase the same coverage from Kemper, which in that case admits it would have no cause of action under the released value doctrine. See Travelers Indem., 26 F.3d at 900 ("Why would [the shipper] increase its costs by insuring the same cargo twice?"); cf. Glickfield v. Howard Van Lines, 213 F.2d 723, 726-27 (lack of prejudice stemming from deviation in bill of lading prevented recovery). Even if the released value doctrine technically provides Kemper a cause of action as subrogee, we are not overly sympathetic to the insurer's plight on these facts.

**II.  Claims Under the Carmack Amendment**

Kemper alleges that four of the packages traveled entirely by ground transportation, and that, as a result, the Carmack Amendment, 49 U.S.C. § 14706, applies instead of federal common law. Like the district court, we do not need to determine the applicability of the Carmack Amendment to packages shipped solely using the ground transportation services of an air carrier.[5] Instead, we agree that, with respect to the fair opportunity to declare a higher rate, the constraints on limitation clauses are the same for motor carriers covered by the Carmack Amendment as they are for air carriers covered by the released value doctrine.

Section 14706(c)(1) allows a carrier "to establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established . . . by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation."

[5] We note, however, that there is significant precedent indicating that the Carmack Amendment simply does not apply to an air carrier such as FedEx. See, e.g., Arkwright-Boston Mfrs. Mut. Ins. Co. v. Great W. Airlines, 767 F.2d 425, 428 (8th Cir. 1985); Williams v. Fed. Express Corp., No. CV 99-06252 MMM BQRX, 1999 WL 1276558, at *3 (C.D. Cal. Oct. 6, 1999); Assoc. X-Ray Corp. v. Fed. Express Corp., Civ. No. 3:93CV02209(AVC), 1994 WL 897156, at *3 (D. Conn. July 22, 1994). None of these cases holding the Carmack Amendment inapplicable to air carriers addresses the specific facts alleged by Kemper, namely that certain packages traveled wholly by ground transportation. However, in Federal Express Corp. v. California Public Utilities Commission, 936 F.2d 1075, 1078 (9th Cir. 1991), the Ninth Circuit held that state law was preempted by the Airline Deregulation Act vis-à-vis packages shipped from Los Angeles to Oakland, California entirely by truck, suggesting that the Carmack Amendment does not apply to such packages.

In Camar Corp. v. Preston Trucking Co., 221 F.3d 271, 276 (1st Cir. 2000), we indicated that this reasonableness requirement is met when the agreement affords the shipper "a reasonable opportunity to choose between the regular rate and a rate reflecting a higher level of liability." As we described earlier, this is virtually the same language that we and other courts have used in applying the released value doctrine. See Hill, 996 F.2d at 1317; Diero, 816 F.2d at 1365; First Pa. Bank, 731 F.2d at 1116. Moreover, our cases have suggested that the two inquiries apply essentially the same standard. See Hill, 996 F.2d at 1317 (citing both "post-deregulation air carrier cases" and "regulated carrier cases" to support one proposition); Hollingsworth & Vose Co. v. A-P-A Transp. Corp., 158 F.3d 617, 620 (1st Cir. 1998) (noting the possibility that the air carrier case, Hill, had overruled a Carmack Amendment case, Anton v. Greyhound Van Lines, 591 F.2d 103 (1st Cir. 1978), but choosing to overrule Anton explicitly). Kemper has suggested no particular reason why the Carmack Amendment would mandate a different result than the released value doctrine in this case, and our review of the case law has not indicated that such a difference exists. We therefore agree that amendment of the complaint was futile, and was appropriately denied by the district court. See Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 792 (1st Cir. 1995).

**III.  Willful and Wanton Misconduct**

-13-

Alternatively, Kemper argues that it should be allowed to amend its complaint to include claims of willful and wanton misconduct, and that such misconduct should qualify for the conversion exception to the released value doctrine. However, we agree with the district court that the conversion exception is far more narrow than would be necessary to include the conduct alleged by Kemper.

In <u>Glickfield</u> v. <u>Howard Van Lines</u>, 213 F.2d 723, 727 (9th Cir. 1954), the Ninth Circuit outlined the scope of the conversion exception in the context of employee theft:

> [I]f the property has been converted by the carrier, it would be against public policy to permit the carrier to limit its liability and thus to profit from its own misconduct. However, the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability where the conversion is by third parties or even by its own employees. In the latter circumstance, while the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct.

<u>Glickfield</u> strongly suggests that the conversion exception only applies when a carrier has converted the property "for its own use or gain." Most other courts to address the subject have interpreted <u>Glickfield</u> in this manner. <u>Am. Cyanamid Co.</u> v. <u>New Penn Motor Express, Inc.</u>, 979 F.2d 310, 315-16 (3d Cir. 1992) ("[N]othing short of intentional destruction or conduct in the nature of theft" will void

the limitation on liability."); <u>Diero</u>, 816 F.2d at 1366 ("[O]nly an appropriation of property by the carrier for its own use will vitiate limits on liability."); <u>Rocky Ford Moving Vans</u> v. <u>United States</u>, 501 F.2d 1369, 1372-73 (8th Cir. 1974) (willful misconduct insufficient to invalidate value declaration in absence of fraud); <u>Aircraft Instrument & Radio, Co.</u> v. <u>United Parcel Serv., Inc.</u>, 117 F. Supp. 2d 1032, 1036 (D. Kan. 2000); <u>Cash Am. Pawn, L.P.</u> v. <u>Fed. Express Corp.</u>, 109 F. Supp. 2d 513, 525 (N.D. Tex. 2000). Because Kemper has made no allegation that FedEx appropriated the property <u>itself</u>, or profited from its conversion, the claim does not fit within the doctrine as outlined in these cases.

Kemper points to our opinion in <u>Hill</u> to suggest that, in this Circuit at least, the conversion exception might have a slightly greater scope. In <u>Hill</u>, we noted that "we have found a case that suggests, in dicta, that the willful nature of misconduct might make a difference." 996 F.2d at 1320 (citing <u>Glickfield</u>, 213 F.2d at 727); <u>see also</u> <u>Lerakoli, Inc.</u> v. <u>Pan Am. World Airways, Inc.</u>, 783 F.2d 33, 37 (2d Cir. 1986) (suggesting that proof of "willful or intentional conduct" on the part of the carrier is sufficient).

However, both our decision in <u>Hill</u> and our review of other cases indicate that the conversion exception requires at least a stronger allegation of affirmative misdeeds than the willful blindness alleged by Kemper. In <u>Hill</u> itself, we chose not to decide the issue

-15-

because no showing of willfulness had been made. 996 F.2d at 1320. We also clearly held that even egregious instances of negligence did not qualify for the exception. Id. ("[C]ourts will not impute to commercial parties (agreeing to a liability limitation) an intent to litigate the degree to which loss-causing negligence was ordinary, gross, or egregious."). From these comments, and from the almost universal position of other federal courts to have addressed this issue, we conclude that -- whether or not the conversion exception to the released value doctrine includes certain willful conduct not technically a conversion and not benefitting the carrier -- willful blindness to the activity of third parties (even employees) does not qualify. Therefore it would have been futile for Kemper to have amended its complaint in this manner, and the district court appropriately refused its request to do so. See Carlo, 49 F.3d at 792.

## CONCLUSION

We find that the contractual limitation of liability is valid under the released value doctrine, and that Kemper's proposed amendments to its complaint would indeed have been futile. The opinion of the district court is **affirmed**.