KEMPER INSURANCE COMPANIES,
Plaintiff,

v.

FEDERAL EXPRESS
CORPORATION, et.
al., Defendants.

No. 99–320–CIV.

United States District Court,
S.D. Florida.

June 25, 2001.

Alan Howarth, Esq., Gallagher and Howarth, Haydenvill, MA, Robert Kahn, Esq., Miami Beach, FL, for Plaintiff.

Mark Dearman, Esq., Dearman & Gerson, Plantation, FL, Timothy Ginn, Esq., Cynthia Collins, Esq., Federal Express Corporation, Legal Department, Memphis, TN, for Defendant.

### ORDER AND FINAL JUDGMENT

MIDDLEBROOKS, District Judge.

This CAUSE comes before the Court upon Plaintiff's Post–Trial Motion for Judgment as a Matter of Law, filed March 29, 2001. This Court has reviewed the submissions of the parties, and the record, and is advised in the premises.

This suit is an action by Plaintiff, Kemper Insurance Companies ("Kemper") to recover the value of 23 shipments of jewelry tendered to Defendant, Federal Express Corporation ("FedEx"). The shipments were lost or stolen by FedEx's employees while in FedEx's care, custody, and control. On March 6, 2001, this Court denied FedEx's Motion for Partial Summary Judgment based on it contractual limitation of liability with Plaintiff because a genuine issue of material fact existed as to whether FedEx's actions, or lack thereof, amounted to wilful misconduct in regard to apparent employee theft. The parties went to trial on that specific issue, and this Court entered · a directed verdict for FedEx at the close of Plaintiff's case. Kemper then moved for directed verdict on the thirteen (13) shipments governed by the Warsaw Convention on the basis that under Article 9 FedEx is precluded from enforcing the limitation of liability because of FedEx's failure to comply with the requirements of Article 8(c). Kemper also moved for directed verdict on the seven domestic and three non-Warsaw Convention, international shipments on the basis that under federal common law, FedEx's maximum declared value of $500 does not comply with the requirements of the released value doctrine. For the following reasons, this Court concludes that Kemper is not entitled to judgment as a matter of law with respect to any of these shipments.

### I. Factual Background

Twenty three jewelry shipments, from Holmes One Service, Inc. ("Holmes") or its insureds, were tendered to FedEx between December 1997 and August 1998 and lost or stolen while in FedEx's care, custody, and control. Kemper underwrote the cargo insurance on the shipments, and has paid claims totaling $303,796 on the shipments. For all of these shipments, FedEx's July 1, 1997 Service Guide was in effect as each of the airbills in this case explicitly incorporated the terms of the Service Guide. In the Service Guide, shippers are advised of FedEx's limit of liability:

### Declared Value and Limits of Liability

A. The declared value of any shipment represents our maximum liability in connection with a shipment, including, but not limited to any loss, damage, delay, misdelivery, nondelivery . . . .

Exposure to and risk of any loss in excess of the declared value is either assumed by the shipper or transferred to an insurance carrier through the purchase of an insurance policy. You should contact an insurance agent or broker if insurance coverage is desired. WE DO NOT PROVIDE INSURANCE OF ANY KIND.

B. Our liability with regard to any package is limited to the sum of $100 unless a higher value is declared on the airbill for the package at the time of tender . . . .

D. If no value is declared, the declared value and our liability will be limited to the actual value or $100, whichever is less.

The Service Guide further provides:

*Liabilities Not Assumed*

WE WILL NOT BE LIABLE FOR ANY DAMAGES, WHETHER DIRECT, I INCIDENTAL, SPECIAL, OR CONSEQUENTIAL, IN EXCESS OF THE DECLARED VALUE OF A SHIPMENT, WHETHER OR NOT WE KNEW OR SHOULD HAVE KNOWN THAT SUCH DAMAGES MIGHT BE INCURRED, INCLUDING, BUT NOT LIMITED TO LOSS OF INCOME OR PROFITS

In accordance with this liability limitation, shippers are allowed to declare a value up to $50,000 for general freight items; however, for "items of extraordinary value", including jewelry, shippers only can declare a maximum value of $500. Terms in the Service Guide allow a shipper to declare a value for a shipment at the time of tender by either writing the value on the paper airbill or by entering the value in the Powership meter. For all twenty-three shipments at issue in this suit, no value was declared at all by the shippers. Instead, the shippers chose to purchase private insurance with Kemper and transfer the risk of loss to them.

Of these shipments, thirteen of the 23 shipments are international shipments governed by the Warsaw Convention (Shipment Nos. 2–6, 9,10, 12, 13, 15, 17, 21 and 23); three are international, but not governed by the Warsaw Convention (Shipment Nos. 1, 8 and 16); and the remaining seven are domestic (Shipment Nos. 7, 11, 14, 18–20 and 22). These non-Warsaw Convention and domestic shipments are governed by federal common law.

## II. Analysis

### A. Warsaw Convention Shipments

■ The parties acknowledge that thirteen of the shipments at issue (nos. 2–6, 9, 10, 12, 13, 15, 17, 21, and 23) are governed by the Warsaw Convention. Kemper argues that FedEx's limitation of liability should not apply to these shipments because the airway bills did not comply with Article 8(c) of the Convention. Under the Convention, Article 8 enumerates seventeen "particulars" to which an air waybill must conform. *See* Warsaw Convention, Art. 8(a)-(q). The penalty for noncompliance with these "particulars" is found in Article 9, which warns that "if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, . . . the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability." *Id.*, Art. 9. Article 8(c) requires that any "agreed stopping places" must appear on the air waybill.[1] Here, Kemper argues that because FedEx's airway bill does not list any "agreed stopping places," the contractual limitation of liability is inapplicable. This Court disagrees.

1. Article 8 provides, in pertinent part:
 The air waybill shall contain the following particulars:
 . . .
 (c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character.
 Warsaw Convention, Art. 8.

The terms and conditions of the Service Guide and the international airway bills provided that there were no agreed stopping places for these shipments. In this case, it is undisputed that the airway bills incorporated the Service Guide explicitly by reference, stating on the reverse side that "by giving us your package to deliver, you agree to all terms on this Airbill and in our current Service Guide, which is available upon request." The Service Guide then states, "YOU AGREE THAT THERE ARE NO STOPPING PLACES WHICH ARE AGREED AT THE TIME OF TENDER OF THE SHIPMENT AND WE RESERVE THE RIGHT TO ROUTE THE SHIPMENTS IN ANY WAY WE DEEM APPROPRIATE" (emphasis in original). Addressing this precise circumstance, the Ninth Circuit concluded:

the air waybill made it perfectly clear that there were no agreed stopping places. Federal Express explicitly reserved the right to route the shipment as it saw fit. Accordingly, Federal Express was under no obligation to disclose the intermediate stop in Memphis. The text of Article 8(c) is not susceptible to any other conclusion, and therefore, the district court did not err in holding that Federal Express had issued a conforming air waybill.

*Insurance Co. of North America v. Federal Exp. Corp.*, 189 F.3d 914, 919 (9th Cir. 1999). This Court finds this reasoning persuasive and concludes that FedEx's airway bill was valid under Article 8(c) of the Convention. Kemper cites *Sotheby's v. Fed. Exp. Corp.*, 97 F.Supp.2d 491 (S.D.N.Y.2000) to claim that FedEx must list agreed stopping places even despite its disclaimer on the airway bill and Service Guide. However, as acknowledged in footnote five of that opinion, the *Sotheby's* case is distinguishable from the *Insurance Co.* decision because the *Sotheby's* case in-

volved an airway bill that did not expressly incorporate the Service Guide nor its stopping place disclaimer. Accordingly, *Sotheby's* reasoning on this point is inapplicable to this case where, like in *Insurance Co.*, the Service Guide and its disclaimer were incorporated expressly by the airway bill. FedEx therefore is entitled to a liability limitation of $9.07 a pound, since a greater value was not declared, under the terms of the Warsaw Convention.

**B. Remaining Shipments Governed by Federal Law**

 As explained in prior orders and as the parties agree, whether these remaining shipments are bound by the limitation liability provisions contained in the airway bills and Service Guide is a matter of federal common law. Under federal common law, carriers may limit their liability to the value of the shipment if "(1) the shipper has reasonable notice of the rate structure and (2) is given the option to pay a higher price for greater protection." *Kemper Ins. Cos. v. Federal Exp. Corp.*, 115 F.Supp.2d 116, 122 (D.Mass.2000); *see also Hill Constr. v. American Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir.1993); *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1365 (9th Cir.1987). This requirement that the carrier give the shipper an option of greater protection in order to properly limit its liability is called the "released or declared value doctrine." *See Deiro*, 816 F.2d at 1365; *see also Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145 (N.D.Ill.1985). If the liability provision satisfies this doctrine, then its terms are enforceable. *See Read–Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1197 (9th Cir.1999).

 In this case, Kemper seeks to invalidate the limitation provisions outlined in the airway bill and Service Guide by arguing that FedEx's policy of only allowing

shippers to declare a value of $500 for items of extraordinary value like jewelry violates the released value doctrine. Kemper contends that because the Service Guide plainly states that any effort to declare a value in excess of the $500 maximum is null and void, FedEx offers no terms under which a shipper could hold FedEx liable for the full value of jewelry valued over $500. Kemper claims that this choice between receiving $100 or a declared value up to $500 for lost shipments is insufficient under the released value doctrine because it provides no opportunity to insure the shipments at their full value through FedEx. After reviewing the caselaw, this Court disagrees with Kemper for the following reasons.[2]

FedEx is in the business of offering low-cost global shipping. Undoubtably, its ability to offer competitive shipping prices is enhanced by its liability limits—limits clearly delineated to customers and for which Kemper does not contend there was a lack of proper notice. Kemper's position is that federal law requires a shipping carrier to accept liability for the full value of all goods it transports, and that because FedEx limits the value at which items of "extraordinary value" can be declared, the limitations policy is unenforceable. FedEx's limits with respect to extraordinary value items clearly seeks to prevent the incursion of large liabilities from lost shipments of very expensive items—liabilities which likely to be passed on to consumers in the form of higher shipping prices. Kemper, of course, is a private insurance company that agreed to indemnify shippers for jewelry shipments subsequently lost by FedEx. No one forced Kemper to accept this risk of loss, and presumably the shippers paid a premium to Kemper, a premium determined by Kemper, in exchange for the policy and the transfer of the risk of loss. Now, Kemper seeks to abrogate FedEx's liability limitation provisions so that FedEx may be held liable for the value of the lost shipments. Essentially, Kemper's argument boils down to this statement: FedEx either can refuse to ship high-value items like jewelry or, it can ship such items and allow shippers to declare and be reimbursed for the full value of such items. However, irrespective of whether this requirement is good public policy, federal law does not compel this requirement of FedEx. Like the district court in *Kemper*, 115 F.Supp.2d at 122–24, that considered this very same issue, I conclude that FedEx's limitation of liability provision does not violate the released value doctrine.

■ My review of the caselaw has found no case, and Kemper cites to no case, that stands for the proposition that "a company cannot limit its liability, even as to the 'declared value,' if it clearly states that it will not accept a valuation above a certain limit, either for some or all goods." *Id.* at 123. So long as a carrier offers some sort of alternative where a shipper has "a choice of paying a higher rate for greater protection, federal courts have normally found those limitations lawful." *Hill Construction*, 996 F.2d at 1317. No case cited

---

**2.** Alternatively, as the case facts establish, no value was declared at all for the twenty-three shipments in question. The fact that the shippers chose not to declare any value for these jewelry shipments seems to raise a quasi-issue of standing: how can Kemper challenge the insufficiency of a declared value policy when no value was declared, even the challenged $500 allowable maximum, despite a reasonable opportunity to do so? FedEx argues that since no value was declared with respect to these shipments the sufficiency of their declared value policy is a moot issue here. I too am somewhat skeptical of Kemper's standing to raise this challenge in light of the case facts but consider the merits of the challenge anyway.

by Kemper has ruled that a carrier is barred from placing a cap on the highest valuation for which it accepts liability. In fact, as explained by the *Kemper* court, "there are numerous cases in which courts have enforced tariffs or contracts that limited the value that a shipper could declare, for some or all goods, and therefore effectively limited their liability, even for the higher level of protection." *Kemper*, 115 F.Supp.2d at 123–24 (collecting cases and explaining that a carrier need not refuse to carry items exceeding the value of its declared value policy for the policy to be valid). In addition, the shippers in this case were given the opportunity to purchase private insurance for their shipments, and, in fact, they chose that precise option. As other courts have recognized, in situations where a limitation of liability policy provides adequate notice to customers and there is available spot insurance to cover their risk of loss, the released value doctrine generally is satisfied. *See United States Gold Corp. v. Federal Exp. Corp.*, 719 F.Supp. 1217, 1225 (S.D.N.Y.1989); *Read–Rite Corp.*, 186 F.3d, at 1198.[3] Here, the shippers chose to insure their goods privately rather than declare a higher value (up to $500) and pay the higher fee. "The fact that the shipper had adequate notice, [the] opportunity to purchase a higher level of liability from FedEx (capped at $500), and the opportunity to purchase private insurance if the liability cap was insufficient for the shipper's purposes, suggest that in this case the goals of the released value doctrine have been met." *Kemper*, 115 F.Supp.2d at 124. Therefore, this Court concludes that Fe-

dEx's policy does not violate the released value doctrine. Accordingly, FedEx's liability is limited to $100 per shipment for the ten non-Warsaw Convention shipments pursuant to the limitation of liability provision.

### III. Conclusion

For the foregoing reasons, FedEx's liability is limited to $9.07 a pound for the thirteen shipments governed by the Warsaw Convention and to $100 in total for the remaining ten shipments pursuant to the relevant liability limitation provision. Plaintiff's Post–Trial Motion for Judgment as a Matter of Law is DENIED. FINAL JUDGMENT is entered in favor of DEFENDANT. It is further ORDERED that this case is CLOSED, and all pending motions are DENIED AS MOOT.

---

**3.** As the Ninth Circuit explained,

The function of the federal common law rule requiring notice of limited liability is to ensure that the shipper has an opportunity to make an informed choice between, on the one hand, shipping at a lower cost with limited liability, and, on the other, separately purchasing insurance ·or shipping at a

higher cost without limited liability ... The separate purchase of insurance simply cannot be reconciled with a contention that the shipper has been disadvantaged by a lost opportunity to pay the carrier more money in return for greater coverage.

