David A. ACKERMAN, Plaintiff,

v.

UNITED STATES and Colin L. Powell, Defendants.

No. CIV.A. 01–01901 (HHK).

United States District Court, District of Columbia.

July 12, 2004.

**2**

Bridget Read Mugane, Columbia, MD, for Plaintiff.

Mark E. Nagle, Sheppard, Mullin, Richter & Hampton, Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KENNEDY, District Judge.

David Ackerman ("Ackerman") brings this action against defendants, the United States and Colin Powell, Secretary of State, for personnel decisions resulting in Ackerman's separation from the Department of State's Foreign Service. Ackerman claims he was wrongfully discharged and that the Foreign Service Grievance Board's decision to the contrary was procedurally and substantively flawed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Before the court are Ackerman's renewed motion for judgment on the pleadings [Dkt. # 35] and defendants' renewed cross-motion for summary judgment [Dkt. # 34]. Upon consideration of the motions, and the record of this case, the court concludes that defendants' motion must be granted and plaintiff's motion must be denied.

## I. BACKGROUND

### A. Statutory Background

At least once per year, each member of the Foreign Service is evaluated by her supervisor in an Employee Evaluation Report ("EER"). On the basis of this EER, a selection board then competitively evaluates each Foreign Service employee, recommending promotions and salary increases and designating individuals who may not be meeting the standards of their class.[1] 22 U.S.C. §§ 4001, 4008. Individu-

---

1. Foreign Service officers are categorized by "class"; there are nine classes in all. Officers are evaluated within their class (i.e., their performance is compared against other officers of similar seniority and expertise), and these evaluations determine whether officers

als designated as not meeting performance standards are referred to a Performance Standards Board ("PSB") for further review. The PSB then determines whether the employee should be separated from the Foreign Service. 22 U.S.C. § 4008(b).

The Foreign Service Act provides a three-step grievance procedure for employees seeking review of the PSB's decision. 22 U.S.C. §§ 4131–4140. Initially, an individual files a grievance with the agency. If the agency denies the grievance, the individual may then seek review in the Foreign Service Grievance Board ("FSGB" or "Board"). 22 U.S.C. § 4134. Finally, if the FSGB denies the grievance, an aggrieved party may obtain judicial review of the FSGB's final decision in a United States District Court, which reviews the FSGB's decision under the standards set forth under the APA, 5 U.S.C. § 701 *et seq.*

## B. Factual Background

Ackerman joined the Foreign Service in 1987 and served ten years in various posts in Asia and the former Soviet Union. In July 1997, Ackerman became the Political/Economic Officer at the U.S. embassy in Bishkek, Kyrgyzstan. His first performance evaluation in Bishkek, covering the period October 1997 to April 1998, was very positive. 1R. 33 (April 1998 EER).[2] By October 1998, something had changed, and Ackerman concedes he was tempera-

mental and "short-tempered with his staff." Compl. at ¶ 5.

In early October 1998, Ackerman engaged in a sequence of "abrasive" exchanges with the embassy's head Foreign Service National ("FSN"),[3] under his supervision. *Id.* Ackerman publicly criticized her in a demeaning manner over a minor incident and then sent her at least one derisive e-mail message in which the possibility of her leaving embassy employment was discussed. Distressed, the FSN brought these interactions to the attention of Ackerman's supervisor, Deputy Chief of Mission ("DCM") Angus Simmons.

On October 13, 1998, DCM Simmons met with Ackerman to discuss his conduct and, in particular, the harsh e-mail he sent to the FSN. Agitated and using "very strong language," Ackerman abruptly left the meeting and did not report to work the next day. 1R. 27–28 (Dec.1998 EER). Two days later, Ackerman returned to the embassy and had a brief and heated discussion with the Ambassador, Anne Sigmund, who asked Ackerman not to return to work. Ackerman agreed, claiming he was not well enough to work. Thereafter, Ackerman stopped showing up for work during regular working hours and stopped accepting embassy work assignments. He also requested curtailment from post.[4] Ambassador Sigmund considered declaring Ackerman AWOL but did not because "of his emotional state." *See* 1R. 277 (Sigmund E-mail to Polson (Apr. 24, 2000)).

are promoted to a higher class or terminated. *See* Compl. at ¶¶ 18–20.

2. "1R." refers to the administrative record considered by the Grievance Board before review in this court. "2R." refers to the additional record of proceedings upon remand.

3. "Foreign Service Nationals" are local citizens employed by American embassies abroad.

4. "Curtailment" is when an employee's tour of duty from an assignment is shortened. Curtailment is an assignment action, not a disciplinary one. *See* 3 FAM 2442. A Foreign Service employee assigned abroad may request curtailment for any reason. 3 FAM 2443.1.

Instead, she granted curtailment and let Ackerman use sick and annual leave until he left Bishkek in December 1998.

In December 1998, DCM Simmons and Ambassador Sigmund evaluated Ackerman's performance from April to December 1998 in an EER. The EER found satisfactory Ackerman's substantive knowledge, leadership, intellectual abilities, and foreign language skills. However, it rated as sub-par Ackerman's management and interpersonal skills during this period, discussing in detail the events which led to Ackerman's departure from post, including his refusal, after October 13, 1998, to accept work assignments until his request for curtailment was granted, 1R. 24 (Dec.1998 EER), and his absence from work starting from October 16, 1998. *Id.* at 1R. 27.

The following year, the Foreign Service selection board conducted its annual review and, after examining Ackerman's file containing the December 1998 EER, low-rated him and referred him to the PSB. The PSB, in turn, reviewed Ackerman's 1998 EER, along with those from 1992 and 1996, and found that "Mr. Ackerman's actions demonstrate serious deficiencies in leadership, managerial, intellectual, and interpersonal skills that are expected of Mid–Level and even Junior Officers." 1R. 91 (PSB Designation for Separation at 8). The PSB concluded, unanimously, that Ackerman did not meet the standards of his class and should be selected out. 1R 92 (*Id.* at 9). Ackerman was then informed that he was to be separated from the Foreign Service, effective April 14, 2000. This separation was stayed pending appeal.

On March 14, 2000, Ackerman filed a grievance with the State Department, claiming that his 1998 EER, considered by the selection board and the PSB, contained erroneous and falsely prejudicial state-

ments. The Department denied the grievance on June 9, 2000, finding no significant procedural error in the EER's preparation and no credible evidence that the statements in the EER were erroneous or falsely prejudicial. 1R. 57–72 (Mugane Ltr. to De La Garza).

Ackerman then appealed to the FSGB, raising several claims. In the claim relevant to the instant action, Ackerman argued that he had not received performance counseling, as required by internal guidelines, during the rating period for the December 1998 EER, was unaware that his supervisors harbored concerns about his behavior, and was thus unable to adjust his behavior to conform to their expectations. On March 14, 2001, the FSGB found that Ackerman should have received performance counseling sometime in the four months before the events of October 1998. However, the Board concluded that the lack of formal counseling was not a substantial factor in Ackerman's separation from the Foreign Service and upheld PSB's decision. The Board found that Ackerman received informal counseling and had failed to prove the agency would not have separated him anyway. Ackerman was separated from the Foreign Service, effective September 22, 2001.

Ackerman then sought judicial review of the FSGB decision in this court. On October 29, 2002, this court granted defendants' motion for summary judgment in part, denying all but one of Ackerman's claims. *See generally* Mem. Op. of Oct. 29, 2002. The court found the FSGB decision arbitrary and capricious on one claim because it assumed, contrary to the record, that Ackerman had received informal counseling sometime before October 1998. *Id.* at 16–17. Further, the court held that the FSGB improperly placed the burden of proof upon Ackerman to show that performance counseling "would have signifi-

cantly altered his approach." FSGB 2000–45 at 18. The court remanded the issue to the FSGB, ordering it to apply the standard in 22 C.F.R. § 905.1(c) and "determine whether the agency can show, by a preponderance of the evidence, that it would have removed Ackerman from the Foreign Service, absent the procedural error caused by the agency's failure to provide ... performance counseling." Mem. Op. at 24–25.

On June 13, 2003, the FSGB decided on remand that defendants proved, by a preponderance of the evidence, that "the Department would have designated [Ackerman] for selection out notwithstanding the procedural error found by the Court." 2R. 74 (Decision on Remand at 23 (June 19, 2003)). Specifically, the Board found that timely, formal performance counseling would have made no difference, 2R. 79, and refused to reinstate Ackerman to the Foreign Service. Ackerman now requests review of the FSGB decision on remand.

## II. ANALYSIS

### A. Legal Standard

■■ This case is before the court on renewed cross-motions for summary judgment.[5] While summary judgment is appropriate to resolve disputes over administrative actions, the court does not employ the standard under FED. R. CIV. P. 56 but, instead, applies the standard of review under the relevant statute and the APA. *Gonzalez v. U.S. Dep't of State,* 135 F.Supp.2d 193, 195 (D.D.C.2001).

■■ FSGB decisions are reviewed under the APA and, as such, should not be set aside unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *United States v. Paddack,* 825 F.2d 504, 513

(D.C.Cir.1987); 5 U.S.C. § 706. This standard of review is highly deferential, reflecting a judgment that "the Board's familiarity with the foreign service ought to be respected by the judiciary." *Paddack,* 825 F.2d at 514. Courts must defer to the agency's interpretation of a regulation "unless it is plainly wrong." *General Carbon Co. v. OSHRC,* 860 F.2d 479, 483 (D.C.Cir. 1988).

■■ While the court must give the FSGB's decision due deference and is not empowered to "substitute its judgment" for that of the Board, the court must give the Board's decision "a thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In addition, under the APA, review of the FSGB's decision is limited to the administrative record that was before the Board at the time the decision was made; the court cannot go fishing about for more evidence. *Florida Power & Light v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

■■ In this case, the court reviews the Board's determination, under 22 C.F.R. § 905.1(c), that defendants proved, by preponderance of the evidence, that even absent the State Department's procedural error (i.e., its failure to provide formal performance counseling), Ackerman would have been selected out from the Foreign Service. The court's scope of review is narrow, focusing on whether the FSGB applied § 905.1(c) in a reasonable way supported by the record, even if the court, in a de novo review, may have reached a different result than the FSGB.

---

**5.** Because matters outside the pleadings have been considered, Ackerman's motion for judgment on the pleadings is treated as one for summary judgment, under Fed.R.Civ.P. 12(c).

## B. FSGB Decision on Remand

Ackerman raises two general arguments in challenging the FSGB's decision on remand as arbitrary and capricious. First, he claims the FSGB put too much weight on some unfavorable EERs and not enough emphasis on other favorable EERs. Second, Ackerman asserts that the FSGB failed to consider a key hypothetical—if Ackerman had been counseled before October 1998, he would not have clashed with the FSN, all the other conduct criticized in the December 1998 EER would not have occurred, and he would not have been selected out. The court considers each argument in turn and finds neither compelling.

### 1. Weighting of EERs

■ Ackerman argues that the FSGB over-relied on criticisms of his interpersonal relations in "remote" EERs from 1992 and 1996, and did not place enough emphasis on more recent, favorable EERs from 1997 and 1999. Pl.'s Mot. for Judgment on the Pleadings at 18–23. The FSGB accorded much weight to the 1992 and 1996 EERs, finding them relevant to establish Ackerman's history of problems with interpersonal relations, which then manifested themselves again in October 1998. 2R. 68. Ackerman, however, insists that the "EERs closest in time to October 1998 are the most accurate predictor of how Plaintiff would have responded to a performance review in September 1998." *Id.* at 20. That is, he argues that the FSGB overlooked the 1997 and 1999 EERs, which indicated that he had good interpersonal skills, displayed "finesse" in dealing with difficult matters and worked cooperatively with others. *Id.* at 21–23. By valu-

ing "remote" EERs, Ackerman concludes the FSGB wrongly decided that the October 1998 events were part of an ongoing problem and wrongly concluded that Ackerman would not have responded constructively to timely performance counseling.

■ However, under the highly deferential administrative review standard, the decision to weight different events in a foreign service officer's employment history is within the expertise of the FSGB and must receive deference. *See Reiner,* 686 F.2d at 1024 ("We cannot say that the board acted arbitrarily in refusing to give more weight to the value of [plaintiff's] service as a [foreign service officer]. This is precisely the type of issue on which a reviewing court should not substitute its judgment for that of the agency."). Ackerman does not claim that the FSGB's findings had no support in the record, or that the FSGB failed to consider parts of the record.[6] Neither does Ackerman suggest that the 1992 and 1996 EERs were irrelevant. Rather, Ackerman simply argued that the 1997 and 1999 EERs were more relevant or "probative." Pl.'s Opp'n at 5. The court, however, cannot second-guess the FSGB's decision to ascribe more importance to the 1992 and 1996 EERs and less to others. *Reiner,* 686 F.2d at 1024. The court must grant defendants' summary judgment motion with regard to this argument.

### 2. Performance Counseling

■ Ackerman also argues that the FSGB decision was arbitrary and capricious because it did not consider how timely performance counseling would have altered the chain of events that did occur— that counseling would have prevented not

---

6. The FSGB had considered this same argument upon remand: "[Ackerman's] submission then draws on recent EERs to demonstrate that Ackerman was a 'skillful, caring

supervisor' (1997–98 EER), was praised for his interpersonal skills, and responded well to constructive criticism (1999 EER)." 2R. 68.

just his heated exchange with the FSN but all subsequent events that led to his dismissal. The court denies Ackerman's claim; in so doing, it reviews the FSGB decision for its support in the record and examines Ackerman's argument.

As an initial matter, the FSGB decision on remand is supported by the record. The FSGB followed this court's mandate in considering, under the burden of proof set by § 905.1(c), what would have happened if Ackerman had received timely counseling. The FSGB "assume[d] that the DCM would have mentioned that he observed Ackerman being 'short-tempered' with the FSNs." 2R. 73.[7] The FSGB nevertheless concluded that defendants' failure to provide counseling did not prejudice Ackerman. The FSGB found that defendants' "decision to low rank Ackerman derived directly from his unacceptable conduct in that meeting and his subsequent behavior, not from his management style in supervising the FSN." 2R. 74. This finding was based on other documents in the record as well. See 2R. 79 ("We find that [the PSB and State Department Selection Board] made their recommendations in the chain of events that resulted in Ackerman's selection out based on his emotional October 13 confrontation with the DCM and his subsequent persistent refusal to discuss his conduct or his curtailment with either the DCM or the Ambassador . . . .").

Further, the FSGB determined that Ackerman's conduct in October 1998 was consistent with criticisms in his 1992 and 1996 EERs; previous events recorded in older EERs had " 'important parallels with the events in Bishkek.' " 2R. 75 (citing 1999 Selection Board Recommendation);

see also 2R. 79 (noting that the decision to select out Ackerman was based on his behavior in October 1998 and was "compounded with examples of his loss of temper, poise and perspective recorded in his EERs for 1996 and 1992."). In addition, the Board noted Ackerman's somewhat acerbic and, at times, incredulous response to criticism. 2R. 73 ("[W]e noted, as had the 1999 SB and the PSB that Ackerman's recorded response to criticism in two previous EERs had been caustic and unconstructive.").

Finally, the FSGB seemed to have taken these criticisms in the context of the entire record of Ackerman's career. See, e.g., 2R. 76 (noting the FSGB's scrutiny of the 1999 PSB report which recommended Ackerman for separation and "review[ed] his extensive service in the former Soviet Union, citing his achievements as well as criticisms cited in his 1998, 1996 and 1992 EERs."). In the end, what mattered most to the FSGB was Ackerman's inability to control his temper, with both subordinates and superiors, and his poor reaction to others' attempts to discuss such temperamental outbursts, see 2R. 74, not just his mistreatment of a FSN in October 1998. As a result, the FSGB concluded that defendants met their burden of proving that Ackerman would have been selected out even had he received formal performance counseling.

Ackerman contests the FSGB's conclusion, insisting that the FSGB failed to consider that timely performance counseling would have prevented him from rebuking the FSN in October 1998 and, in turn, would have averted everything that resulted. That is, he would not have sent harsh

---

7. Therefore, Ackerman was wrong to argue that the FSGB failed to consider what would have happened if he had not received performance counseling. See Pl.'s Opp'n at 4 ("[T]he defendants err by refusing to examine the chain of causation: what would have happened if Mr. Ackerman had deceived the required performance review by September 1998 . . . ?").

emails, would not have reacted poorly in his meetings with DCM Simmons and Ambassador Sigmund, would have received an entirely favorable December 1998 EER, and would not have been low-rated and selected out. Ackerman argues that the FSGB decision was arbitrary and capricious because it did not analyze events thus.

Ackerman is partly correct—at least in that the events of October 1998, as described in the December 1998 EER, are indeed central to this case. Neither party seriously suggests that Ackerman would have been selected out but for the December 1998 EER,[8] or that there was any basis for his selection out other than his problems with interpersonal relations.[9] Even the FSGB acknowledges centrality of the October 1998 events and December 1998 EER.[10] Ackerman is correct to ob-

serve that "[t]he issue in the instant case is how the [December 1998 EER] would have been different if Mr. Ackerman had been counseled," and that "[t]he case pivots on this hypothetical." Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4.

However, Ackerman is wrong to argue that the FSGB should have disregarded all criticisms of him in the December 1998 EER. The court cannot second-guess the FSGB's treatment of the 1998 EER, and whether the State Department would have selected out Ackerman in spite of it, because the FSGB's decision was not "plainly wrong." *General Carbon*, 860 F.2d at 483. The court reaches this conclusion for several reasons.

First, Ackerman fails to identify parts of the record that contradict the FSGB's conclusions about the December 1998 EER.[11]

**8.** Previous EERs, specifically those from 1992 and 1996, would not have been sufficient on their own to justify Ackerman's selection out. These EERs supported the FSGB's finding that Ackerman had a history with being impatient with people. But they did not suffice as an independent basis to sustain that conclusion. *See* 2R. 79 (noting that the behavior recorded in the 1992 and 1996 EERs merely "compounded" the conduct discussed in the 1998 EER).

**9.** Defendants argue that Ackerman was selected out because there were "many areas where plaintiff's performance was found to be inadequate ..." Defs.' Opp'n at 6. The FSGB appeared to agree with this statement. *See* 2R. 79 (purporting to find that "Ackerman's performance failures were traceable to a number of flaws" citing *Gonzalez*, 135 F.Supp.2d 193). However, these statements are misleading. In *Gonzalez*, a court upheld an employee's selection out because of his poor performance in many unrelated areas. *See Gonzalez*, 135 F.Supp.2d at 198 (citing the plaintiff's " 'lack of initiative'; ... inability or lack of desire to manage or organize his work environment; lack of technical expertise; and to a lesser extent, lack of good interpersonal skills."). In this case, the FSGB focused solely on Ackerman's interpersonal issues. *See* 2R. 74–77. The phrase "number of flaws"

refers to repeated problems with interpersonal skills, not performance issues in several discrete areas. For unlike in *Gonzalez*, in this case the FSGB did not mention Ackerman's problems any other area aside from interpersonal relations, *see id.*, though some EERs contain some minor criticisms in other skill areas. *See, e.g.,* 1R. 178 (1996 EER) (noting that Ackerman "need[ed] to make a greater effort to be responsive to tasks and deadlines established by the Front Office and by Washington.").

**10.** 2R. 74 ("Most enlightening is the account contained in the grieved [December 1998] EER."); 2R. 79 ("[The selection board and PSB] made their recommendations in the chain of events that resulted in Ackerman's selection out based on his emotional October 13 confrontation with the DCM and his subsequent persistent refusal to discuss his conduct ....").

**11.** By contrast, in the October 29, 2002 memorandum opinion, this court found that the FSGB decision was wrong because it had assumed informal counseling had taken place when record evidence clearly indicated that it had not. Mem. Op. at 17.

He suggests that the record is susceptible of a different reading of the 1998 EER, under which he would not have been selected out. Pl.'s Mot. for Judgment on the Pleadings at 10. But this conclusion, as Ackerman argues it, requires deliberate disregard of the record rather than a reinterpretation of it. He insists the FSGB's decision should have "expunged all mention" of the events of October 1998 and that, thus cleansed, the December 1998 EER would have been "wholly positive." See id. at 11. But a FSGB decision must be based on evidence from the record. See 22 C.F.R. § 909.1 ("Decisions of the [FSGB] shall be based upon the record of proceedings . . . ."). The FSGB reached a decision based on the record before it and avoided the "imagined chain of causation" proposed by Ackerman. See Defs.' Opp'n at 7. The FSGB would have had difficulty adopting a position that required explicitly disregarding the record.[12]

Second, it makes little sense to ignore the parts of the 1998 EER Ackerman wishes the FSGB and the court to disregard.[13] EERs review previous work performance, see 1R. 35–37 (The Foreign Service Employee Evaluation Report: Instructions for Preparation (April 1998)), but their function is prospective—to assess an employee's suitability for promotion or continued service. See generally 1R. 24–33, 175–200 (Ackermans' EERs from 1988 through 1998). The FSGB focused on Ackerman's ongoing suitability

as an officer, noting his apparent inability to "maintain a professional demeanor when challenged," and his problems with authority relationships and understanding the chain of command. 2R. 77 (FSGB Decision on Remand). The Board found Ackerman's behavior on October 13, 1998 "so disruptive and abusive" that he could have been subject to disciplinary action. 2R. 79. Ackerman does not deny these findings but still asks the court to ignore them. Such ignorance would not be bliss. The Department would reinstate an employee whose behavior, it is undisputed, was unacceptable for even junior officers. See 2R. 77 (citing PSB Designation for Separation); 1R. 91 (PSB Designation for Separation at 8) (finding "Ackerman's actions demonstrate serious deficiencies in leadership, managerial, intellectual and interpersonal skills . . . expected of . . . even Junior Officers.").

Finally, Ackerman's argument assumes that his reactions on and after October 13, 1998 were the reasonable and inevitable consequence of the Department's failure to provide performance counseling. Ackerman suggests that anyone in his situation on October 13, 1998, and after, would have had no choice but to "erupt[ ] and respond[ ] with 'strong language' claiming that this was an abuse of his personal communication," leave the office, and refuse to ever discuss the matter again. 2R. 55.[14] Ackerman would assign defendants

---

**12.** Ackerman cites *Wollemborg v. United States*, 1998 U.S. Dist. LEXIS 22738, Civ. No. 95–2248 (D.D.C. July 27, 1998) for the proposition that an agency decision is arbitrary and capricious if it relies on assumptions not based on facts in the record. Pl.'s Opp'n at 4.

**13.** Neither party identifies case law requiring the FSGB to disregard evidence obtained in part through procedural error. Further, the court did not require the FSGB to ignore the 1998 EER. Mem. Op. at 24–25. The court simply ordered the FSGB to consider whether

Ackerman would have been selected out absent defendants' failure to provide performance counseling. *Id.*

**14.** Indeed, Ackerman attempts to justify his outbursts at the DCM and Ambassador: "Plaintiff mistakenly believed his e-mails were being surveilled by the Ambassador and DCM, evidencing there was a loss of trust in him . . . ." Pl.'s Mot. for Judgment on the Pleadings at 11.

responsibility for *all* his actions—not just his treatment of the FSN, but later outbursts and behavior he conceded to be inappropriate, *see* Pl.'s Opp'n at 1 (agreeing with defendants' characterization of the material facts in the case), and which more proximately resulted in his separation. This result is too odd to sustain. For these various reasons, the court finds that the FSGB's treatment of the issue of performance counseling was supported by the record and was not arbitrary or capricious.

## III. CONCLUSION

For the foregoing reasons, the court upholds the FSGB decision on remand. Accordingly, the court denies' plaintiff's motion and grants defendants' motion for summary judgment. A separate order accompanies this memorandum opinion.

## ORDER

For the reasons set forth in the court's Memorandum Opinion docketed this same day, it is this 12th day of July, 2004, hereby

**ORDERED** that Judgment is entered in favor of defendant.