STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        Docket No. AP-05-1


William L. Varney,
       Plaintiff


              v.                        Order on Appeal

FILED & ENTERED
SUPERIOR COURT

AUG 10 2005

PENOBSCOT COUNTY

United Parcel Service,
       Defendant


Pursuant to 4 M.R.S.A. § 105(3)(B) and M.R.Sm.Cl.P. 11(a), defendant United Parcel Service (UPS) appeals from a judgment entered in the District Court (Bangor, Robert Murray, J.) for plaintiff William L. Varney in a small claims action. The court has considered the parties' submissions on this appeal.

The record on appeal includes the written decision issued by the District Court and exhibits that apparently were presented at trial. UPS has not prepared or submitted a transcript of the trial proceedings. In its notice of appeal, UPS stated that neither party had requested that the trial proceeding be recorded and that, consequently, the parties could not submit a statement of the evidence pursuant to M.R.Civ.P. 76F(c). Despite this assertion, UPS then did file a statement ostensibly pursuant to that rule, and Varney submitted a proposed amendment to UPS' statement. The court cannot and does not consider the factual assertions in these submissions to constitute a part of the record on this appeal. As UPS correctly noted in the notice of appeal, a rule 76F(c) statement is proper in cases where electronic recordings are routine or where such a recording was timely requested. The notation in the notice of appeal confirms that the parties did not request a recording, although the applicable trial rules allow a party to make such a request anytime prior to the hearing. *See* M.R.Sm.Cl.P. 6(a). Further, in small claims actions, electronic recordings cannot be considered "routine." The very provision in rule

1

6(a) suggests that recording is not a routine aspect of a small claims hearing, because if it were, the rule would not place a burden on the parties to request that recording process. Further, the applicable administrative order does not include small claims hearings among those proceedings where electronic recordings are required. Rather, the order refers to a small claim party's responsibility to request the recording. *See* Administrative Order DC-90-10 (September 12, 1990). Therefore, because electronic recordings of small claims hearings are not routine, and because it was not requested here, the parties are not authorized to supplement the record as they may be seen to have attempted here, and the record on appeal does not extend to these post-appeal submissions.

In its order, the District Court issued several findings of fact. In the absence of a transcript, this court assumes that the trial record fully supported those findings. *See Rothstein v. Maloney*, 2002 ME 179, ¶ 11, 816 A.2d 812, 813-14. Further, because neither party moved the court to issue further findings of fact and conclusions of law, this court assumes that the trial court "made all the factual findings necessary to its decision." *Shostak v. Shostak*, 2004 ME 75, ¶ 22, 851 A.2d 515, 520.

Here, the District Court found that Varney traveled to Colorado on a hunting trip. He shot an elk and prepared the meat to be shipped back to Maine. He delivered 70 pounds of frozen elk meat to a UPS facility in Colorado. At Varney's request, UPS agreed to ship the meat by its "next day air" service. However, the meat was transported by a ground shipment, and when it arrived in Maine, it was spoiled and worthless. The UPS tariff and shipping documents provided that UPS "does not provide a protective service for the transportation of perishable commodities requiring protection from heat or cold. Such commodities shall be accepted for transportation solely at the shipper's risk for damages caused by exposure to heat or cold." *See* defendant's exhibit 3, ¶ 535.

The trial court declined to enforce any ostensible limitations on UPS' liability for the loss because, it concluded, UPS had failed to allow Varney a reasonable opportunity to choose between the rate he paid and a higher rate that would bind UPS to a higher level of liability. The court found that UPS had failed to properly limit its liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (1997 & Supp. 2004), because it had failed to provide Varney with "an opportunity to meaningfully choose between at least two or more rates, or two or more liability coverage

2

options . . . ." Accordingly, the court found UPS liable to Varney for the actual loss. The court then assessed Varney's damages based on a value of $40 per pound, in addition to expenses of $205 for preparing the elk meat, and $213.66 for the shipping charges themselves. On this basis, the court entered judgment for Varney in the amount of $3,218.66. UPS then filed the appeal at bar.

This case is governed by federal law and, in particular, by the Carmack Amendment to the Interstate Commerce Act. 49 U.S.C. § 14706. The Carmack Amendment was enacted in 1906 "to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir. 2000). Pursuant to this statute, once a carrier, such as UPS, accepts property for transportation and issues a bill of lading, it becomes responsible for the "actual loss or injury to the property caused" by the carrier. 49 U.S.C. § 14706(a)(1). A carrier "is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964); *Ward*, 231 F.3d at 139-40.

To present a prima facie case for recovery under the Carmack Amendment, a shipper "must show 1) delivery to the carrier in good condition; 2) arrival in damaged condition; and 3) the amount of damages caused by the loss." *Camar Corp. v. Preston Trucking Co. Inc.*, 221 F.3d 271, 274 (1st Cir. 2000). Once a shipper establishes a prima facie case, the burden then shifts to the carrier to show 1) that it was free of negligence, and 2) that the damages were caused by one of the above exceptions. *Allied Tube & Conduit Corp. v. Southern Pacific Transportation Co.*, 211 F.3d 367, 370-71 (7th Cir. 2000); *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp. 2d 1322, 1339 (S.D. Ala., 2003).

Here, the District Court found that Varney delivered the meat to UPS in good condition; that UPS delivered the meat to Varney in a damaged condition; and that the value of the meat, which was a total loss, was $2,800. These factual findings correspond to the elements of Varney's prima facie case. For the reasons noted above, this court assumes that the evidence supported each of these findings. The District Court did not

3

explicitly rule that the UPS had failed to meet its burden of proving that it was free of negligence or that the damage was caused by one of the applicable exceptions. However, as is also noted above, this court assumes that the trial court made those findings, which were necessary to support its judgment.

The point of focus in the parties' arguments is the trial court's conclusion that UPS could not benefit from the limitations on liability otherwise available under the Carmack Amendment. Section 14706(a)(1) renders a carrier liable for the "actual loss or injury to the property. . . ." However, under the Carmack Amendment, carriers may limit that liability for the loss to shipped products: "a carrier providing transportation or service . . . may . . . establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper *if that value would be reasonable under the circumstances surrounding the transportation.*" 49 U.S.C. § 14706(c)(1)(A) (emphasis added). Many federal courts, including the First Circuit, have construed the emphasized language as creating a requirement that the agreement between the shipper and the carrier must "afford the shipper 'a reasonable opportunity to choose between the regular rate and a rate reflecting a higher level of liability.'" *Kemper Ins. Cos., v. Federal Express Corp.*, 252 F.3d 509, 515 (1st Cir. 2001) (quoting *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 276 (1st Cir. 2000). *See also Hill Construction Corp. v. American Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir. 1993); *Diero v. American Airlines, Inc.*, 816 F.2d 1360, 1365 (9th 1987); *First Pa. Bank v. Eastern Airlines Inc.*, 731 F.2d 1113, 1116 (3rd Cir. 1984).

The District Court correctly concluded that the UPS tariff and shipping documents controlling the parties' transaction did not give Varney a reasonable opportunity to choose between UPS' regular shipping rate and a rate that created a higher level of liability that UPS would accept. Indeed, the germane provisions of the agreement imposed on Varney *all* risk of loss from heat or cold, which the District Court was entitled to find was the cause of the meat spoliation.[1] In other words, not only did

---

[1] In its brief on appeal, UPS recognizes that Varney's elk meat required protection from heat.

4

Varney not have a reasonable opportunity to make the choice that is a necessary predicate to any statutory limitation of UPS' liability, but Varney had no such opportunity at all.[2]

UPS argues that the "Fair Opportunity Doctrine" is no longer applicable in light of amendments to section 14706 that became effective in 1996. This argument has been rejected through analyses that are persuasive to this court. *See, e.g., Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (11th Cir. 2003); *Emerson Electric Supply Co. v. Estes Express Lines Corp.*, 324 F.Supp.2d 713, 726 (W.D.Pa. 2004). Indeed, one federal court has observed that, in the view of all courts that have considered the issue, the 1996 amendment effected no change in the law governing a carrier's right to limit its liability. *Sassy Doll*, 331 F.3d at 841.

UPS argues finally that the trial court erred in its assessment of damages. First, it contends that the evidence was insufficient to support a finding that the meat had a value of $40 per pound. However, due to the limited scope of the record on appeal, the court attributes to the District Court a sufficient basis for its factual findings. UPS also argues that the court erred as a matter of law because it awarded Varney the costs of freezing and otherwise preparing the elk meat for shipment ($205). UPS does not challenge the trial courts inclusion of shipping costs incurred by Varney as a component of recoverable damages. Because the District Court could have concluded that preparation of the meat for shipping was an integral part of the shipping process, it was also entitled to include the related expense as a recoverable element of Varney's loss.

The entry shall be:

---

[2] UPS gave Varney the opportunity to check the "declared value" box on the UPS Shipping Document that would have established a value of more than the standard $100.00 that UPS offers all shippers. UPS argues here that the declared value provisions of the shipping agreement are inapplicable. If it is applicable, however, the UPS General Tariff specifically excludes perishable items from this coverage. UPS argues that it provided Varney a reasonable choice between coverages. Nonetheless, even if Varney had declared a value greater than $100.00, such a declaration would not have been material, because UPS' policy on shipping perishable goods required Varney to ship the meat at his own risk no matter how much he declared the meat to be worth. *Emerson Electric Supply Co. v. Estes Express Lines Corp.*, 324 F.Supp.2d 713, 728 (W.D.Pa. 2004).

For the foregoing reasons, the judgment of the District Court is affirmed.

Dated: August 7, 2005

_____
Justice, Maine Superior Court

Date Filed  1/10/05  PENOBSCOT  Docket No.  AP-2005-1
County

Action  DISTRICT COURT APPEAL
**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

WILLIAM L. VARNEY  vs.  UNITED PARCEL SERVICE INC.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EATON PEABODY<br>80 EXCHANGE ST<br>P O BOX 1210<br>BANGOR ME 04402-1210<br>BY: F. DAVID WALKER, ESQ. | WEATHERBEE & BURLOCK<br>P O BOX 1127<br>BANGOR ME 04402-1127<br>BY: STEPHEN BURLOCK, ESQ. |
| | CHRISTOPHER BROWN, ESQ.<br>MURTHA CULLINA<br>99 HIGH STREET, 20TH FLOOR<br>BOSTON, MA. 02110-2320 **(admitted as a visiting atty a/o 3/15/05)** |

| Date of Entry | |
|---|---|
| 1/10/05 | Appeal from District Court, District III, Southern Penobscot, Bangor, ME (Small Claims Docket No. BANDC-SC-2004-315) The following pleadings were received and filed.<br><br>1. Statement of Claim (Small Claims)<br>2. Notice of Hearing<br>3. Letter from Defendant requesting Electronic Recording.<br>4. Plaintiff's Exhibit 1, 2, 3 & 5.<br>5. Defendant's Exhibit 1, 2 & 3.<br>6. Plaintiff's Final Argument<br>7. Defendant's Trial Memorandum<br>8. Order (Murray, J.)<br>9. Notice of Appeal (Small Claims) by Defendant.<br>10. Appellant's Statement pursuant to Rule 76F(c).<br>11. Correspondence (4)<br>12. Certified Copy of District Court Docket Entries. |
| 1/12/05 | Appellee's Statement Pursuant to Rule 76F(c) filed. |
| 1/24/05 | Notice and Briefing Schedule 76G Appeal of District Court Civil Action filed. Copy forwarded to attorneys of record. |
| 2/7/05 | Defendant's Motion for Permission to Practice as a Visiting Attorney filed. (Christopher Brown, Esq.) with Exhibit 1 and a proposed order. (Fee not paid) (Fee paid on 2/9/05) |
| 2/22/05 | Memorandum of Law in Support of Appeal From a Judgment in Favor of the Plaintiff and Request for Reversal filed by Appellant. |
| 3/15/05 | Order filed. Defendant's Motion for Permission to Practice As a Visiting Attorney is hereby granted, and Christopher Brown, Esq. is permitted to practice as a visiting attorney in this action subject to the requirements as outlined in M.R.Civ.P. Rule 89(b). (Hjelm, J.) Copy forwarded to all attorneys of recrod. |